TERRA L. BURNLEY, Plaintiff-Appellant, v. BOSCH AMERICASCORP., Defendant-Appellee.
No. 02-5953

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

75 Fed. Appx. 329; 2003 U.S. App. LEXIS 18051

August 27, 2003, Filed

NOTICE:

[**1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

PRIOR HISTORY: ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE. 00-00881. Hayner, Jr. 07-02-02.

DISPOSITION: Affirmed.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff employee sued defendant, her former employer, alleging racially discriminatory discharge under Title VII of the Civil Rights Act of 1964, as amended, *42 U.S.C.S. § 2000e* et seq. The United States District Court for the Middle District of Tennessee granted summary judgment in the employer's favor and subsequently denied the employee's motion for relief from summary judgment under *Fed. R. Civ. P. 60(b)(1)*. The employee appealed.

OVERVIEW: The employee based her Rule 60(b)(1) motion on her counsel's failure to file a timely response to the employer's summary judgment motion. Counsel testified that he inadvertently overlooked the deadline for filing a response because his scheduling calendar was misplaced when he moved his office. The district court denied the employee's motion finding that the employer would suffer substantial prejudice if the employee were granted the requested relief and that the employee had failed to establish a meritorious defense. The appellate court agreed with the district court. Counsel's conduct did not constitute excusable neglect for purposes of Rule 60(b)(1). Although counsel inadvertently overlooked the filing deadline, this inadvertence was inexcusable because the employer, which had already expended substantial resources defending the case and previously received a judgment on the merits, would have suffered substantial prejudice if the employee's motion had been granted. Additionally, the employee failed to satisfy the "meritorious defense" requirement of Rule 60(b)(1) because she did not present sufficient evidence to substantiate her claim of racial discrimination.

OUTCOME: The appellate court affirmed the district court's judgment.

CORE TERMS: summary judgment, racial discrimination, meritorious defense, tote, conversation, excusable neglect, plant, inadvertence, discharged, plastic, prima facie case, agitated, substantial prejudice, failed to present, substantiate, requesting, deposition, neglect, insubordination, walk, failed to substantiate, inexcusable neglect, abuse of discretion, sufficient evidence, order of dismissal, similarly situated, failed to satisfy, protected class, non-discriminatory, substantiating

LexisNexis (TM) HEADNOTES - Core Concepts:

Civil Procedure: Relief From Judgment: Mistake & Excusable Neglect
Civil Procedure: Appeals: Standards of Review: Abuse of Discretion
[HN1] A district court's determinations on a *Fed. R. Civ. P. 60(b)(1)* motion will not be reversed absent an abuse of discretion.

Civil Procedure: Appeals: Standards of Review: Abuse of Discretion



EXHIBIT C

[HN2] An abuse of discretion exists where there is a definite and firm conviction that the trial court committed a clear error of judgment.

Civil Procedure: Relief From Judgment: Mistake & Excusable Neglect
Civil Procedure: Appeals: Standards of Review: Standards Generally
[HN3] In reviewing the district court's denial of a *Fed. R. Civ. P. 60(b)(1)* motion, an appellate court does not consider the merits of the underlying judgment.

Civil Procedure: Relief From Judgment: Mistake & Excusable Neglect
[HN4] See *Fed. R. Civ. P. 60(b)(1)*.

Civil Procedure: Relief From Judgment: Mistake & Excusable Neglect
[HN5] In order to be granted relief under *Fed. R. Civ. P. 60(b)(1)*, the moving party must demonstrate: (1) the existence of mistake, inadvertence, surprise, or excusable neglect; and (2) that he has a meritorious defense.

Civil Procedure: Relief From Judgment: Mistake & Excusable Neglect
[HN6] *Fed. R. Civ. P. 60(b)* does not afford defeated litigants a second chance to convince the court to rule in his or her favor by presenting new explanation, new legal theories, or proof.

Civil Procedure: Relief From Judgment: Mistake & Excusable Neglect
[HN7] The courts have defined "neglect" to include late filings caused by mistake, inadvertence, or carelessness, as well as intervening circumstances beyond the party's control.

Civil Procedure: Relief From Judgment: Mistake & Excusable Neglect
[HN8] Although *Fed. R. Civ. P. 60(b)(1)* does not define the term "excusable neglect," the courts have determined the existence of excusable neglect by making an equitable determination based upon the following factors: (1) the danger of prejudice to the other party; (2) the length of delay; (3) its potential impact on judicial proceedings; (4) the reason for the delay; and (5) whether the movant acted in good faith. However, where the district court granted summary judgment on the merits, rather than on procedural default, these factors are not controlling.

Civil Procedure: Relief From Judgment: Mistake & Excusable Neglect
[HN9] An attorney's inexcusable neglect is normally attributed to his client.

Civil Procedure: Relief From Judgment: Mistake & Excusable Neglect
[HN10] The courts have defined a meritorious defense for purposes of *Fed. R. Civ. P. 60(b)(1)* as a defense good at law. The test is whether the facts alleged by the plaintiff would constitute a meritorious defense if true.

Labor & Employment Law: Discrimination: Title VII
[HN11] In order to establish a prima facie case of discrimination, a plaintiff filing a Title VII of the Civil Rights Act of 1964, as amended, *42 U.S.C.S. § 2000e* et seq., claim must demonstrate the following: (1) that he or she was a member of a protected class; (2) that he or she suffered an adverse action; (3) that he or she was qualified for the position; and (4) that he or she was replaced by someone outside the protected class or was treated differently from similarly situated members in an unprotected class. In order to satisfy the fourth prong, the plaintiff must show that she is similarly situated to the non-protected employee in all relevant respects. To be deemed "similarly-situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

COUNSEL: For Terra L. Burnley, Plaintiff - Appellant: James L. Harris, Nashville, TN.

For BOSCH AMERICAS CORP. aka BJKC, Defendant - Appellee: Gary R. Kessler, Ann B. Hale-Smith, Irvin, Stanford & Kessler, Atlanta, GA.

JUDGES: BEFORE: KEITH and COLE, Circuit Judges; and WEBER, District Judge. *

---

* The Honorable Herman J. Weber, United States District Court for the Southern District of Ohio, sitting by designation.

OPINIONBY: DAMON J. KEITH

OPINION: [*330] DAMON J. KEITH, Circuit Judge. Plaintiff-Appellant Terra L. Burnley ("Burnley") appeals the district court's order denying her motion under *Federal Rule of Civil Procedure 60(b)(1)* for relief from the order dismissing her claim under Title VII of the

Civil Rights Act as amended. [**2] *42 U.S.C. §§ 2000e et seq.*, against her former employer, Defendant-Appellee Bosch Americas Corp. ("Bosch"). In her Title VII claim, Burnley alleged that she was discharged as a result of racial discrimination. The district court granted Bosch's motion for summary judgment on this claim with prejudice, finding that Burnley, who had failed to respond to Bosch's motion, failed to establish a prima facie case of racial discrimination, and that Bosch presented a legitimate non-discriminatory justification for Burnley's discharge. Burnley filed a motion under *Rule 60(b)(1)* requesting relief from summary judgment. The district court denied Burnley's motion finding that: (1) Bosch would have suffered substantial prejudice if this motion were granted because the district court granted summary judgment on the merits of this case; and (2) Burnley failed to present a meritorious defense. For the reasons explained below, we AFFIRM the district court's order.

I. BACKGROUND

This appeal stems from Burnley's Title VII complaint, alleging that Bosch discharged her because of her race. From 1996 until 1998, Burnley, an African-American woman, was employed as[**3] a welder at Bosch's plant in Gallatin, Tennessee. Bosch manufactures power brake boosters for automobile braking systems. On November 5, 1998, Bosch replaced the cardboard totes its welders used for transporting threaded screws ("studs") with lighter plastic totes. Bosch made this change for ergonomic and economic reasons.

Upon arriving at work that morning, Burnley complained to Charles Andrews ("Andrews"), the plant's Kaizen Technician, n1 about the new plastic totes because [*331] she felt that they did not fit on the tote stands as easily as the cardboard totes, and because she believed that the new totes made it difficult for her to perform ergonomic exercises. Andrews submitted an affidavit stating that during this conversation, Burnley was "angry and that she behaved very rudely" and that she raised her voice and pointed her finger. (J.A. at 49.)

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n1 Bosch adheres to the Kaizen philosophy, which is centered around the proposition that it is always possible to improve the means and manner in which tasks are accomplished. Andrews was responsible for implementing various changes that were developed under the Kaizen philosophy, including the decision to switch to plastic totes.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[**4]

Later that day, Burnley approached David Krebs ("Krebs"), President of Bosch Operations, during his customary walk around the plant floor, and she expressed to him her dissatisfaction with the new plastic totes. This exchange lasted between ten and fifteen minutes. Stephanie Sadler, ("Sadler"), a white woman who worked in another welding area, was also present during this exchange and expressed her dissatisfaction with the new plastic totes. Krebs later recounted that during this exchange, Burnley was "practically shouting" and that when he turned to walk away. Burnley said something to the effect of "'turn around, don't you walk away from me.'" (J.A. at 45.) Mike Clem, the plant's Operations Manager, witnessed this exchange and submitted an affidavit stating that Burnley was "agitated and talking in a loud voice." (J.A. at 56.) The exchange ended when Krebs walked away and told Burnley to get back to work.

A few hours later, Pam Whittaker ("Whittaker"), the Team Development and Training Leader at Bosch's Gallatin plant, met with Burnley in order to discuss her conduct earlier that day. During this meeting, Whittaker informed Burnley that her conduct was grounds for termination, [**5] and that she was being suspended pending an investigation.

During the investigation, Aletha Searcy, the Human Resources Representative at Bosch's Gallatin plant, spoke with several witnesses about Burnley's conduct during her conversation with Krebs. Searcy submitted an affidavit stating that all of the witnesses she interviewed indicated that Burnley was very agitated and raised her voice during her conversation with Krebs, and that Sadler's conduct was not comparable to Burnley's conduct. While the investigation was pending, Krebs recommended to Searcy that Burnley be fired for insubordination. On November 10, at the close of its investigation, Bosch finalized the decision to discharge Burnley for insubordination. Sadler was neither discharged nor suspended.

On September 19, 2000, Burnley filed a pro se employment discrimination claim against Bosch under Title VII, alleging that she was discharged because of her race. On February 26, 2001, Bosch moved for summary judgment against Burnley's claim, arguing that Burnley failed to establish a prima facie case of discrimination, and that she did not present evidence to rebut Bosch's

legitimate non-discriminatory reason for discharging[**6] Burnley -- her insubordination. In support of its motion for summary judgment, Bosch submitted several affidavits indicating that Sadler's conduct was not as egregious as Burnley's conduct, and that Burnley was extremely agitated and had raised her voice during her conversation with Krebs.

After Bosch moved for summary judgment, Burnley retained counsel. Burnley's attorney, James Harris ("Harris"), was given additional time to respond to Bosch's motion. However, Harris failed to file a timely response. Harris later testified that he inadvertently overlooked the deadline for filing a response in this case because his scheduling calendar was misplaced when he moved his office. On September [*332] 19, 2001, after evaluating the strength of Bosch's motion against Burnley's complaint, the district court granted Bosch's motion for summary judgment with prejudice. Specifically, the district court found that Burnley failed to bear her ultimate burden of proof that she was discharged because of her race.

Two days later, Burnley filed a motion pursuant to *Rule 60(b)(1)*, requesting relief from the order of dismissal, on the grounds that her counsel's inadvertence constituted excusable neglect, and[**7] that Bosch would not be prejudiced if she were granted relief because no trial date had been set. Burnley also filed a motion to accept her late response to Bosch's motion for summary judgment. The district court granted Burnley's motion to file a late response.

In her response, Burnley denied yelling during her conversation with Krebs, and argued that she had established a prima facie case of racial discrimination under Title VII. The only additional evidence submitted with this response was Sadler's affidavit, in which Sadler noted that she said just as much as Burnley during the conversation with Krebs. Sadler also noted that Burnley's tone was different from hers because "she is black and I am white. Perhaps she uses more slang than I do." (J.A. at 150.)

Upon considering Burnley's response, the district court denied Burnley's request for relief under *Rule 60(b)(1)* finding that: (1) Bosch would suffer substantial prejudice if Burnley were granted relief from the order of dismissal because the district court already dismissed the case on its merits; and (2) Burnley failed to establish a meritorious defense because she did not present evidence substantiating her allegations of racial[**8] discrimination. Burnley filed this timely appeal. She argues that the district court erred when it denied her relief from the order granting summary judgment in favor of Bosch, because she presented sufficient evidence to substantiate her claim of racial discrimination.

II. DISCUSSION

[HN1] A district court's determinations on a *Rule 60(b)* motion will not be reversed absent an abuse of discretion. See *Jinks v. AlliedSignal, Inc., 250 F.3d 381, 385 (6th Cir. 2001)* (citing *Thompson v. Am. Home Assur. Co., 95 F.3d 429, 432-33 (6th Cir. 1996))*. [HN2] An abuse of discretion exists where there is a "'definite and firm conviction that the trial court committed a clear error of judgment.'" *Id. at 384* (quoting *Davis v. Jellico Cmty. Hosp. Inc., 912 F.2d 129, 133 (6th Cir. 1990))*. [HN3] In reviewing the district court's denial of a *Rule 60(b)* motion, our Court does not consider the merits of the underlying judgment. See *id. at 385*.

The district court denied Burnley's *Rule 60(b)(1)* motion, finding that Harris's conduct did not constitute excusable neglect, and that Burnley failed to satisfy the "meritorious defense" requirement because she did[**9] not present sufficient evidence to substantiate her claim of racial discrimination. Although both parties focus their appellate arguments upon the appropriateness of summary judgment, because Burnley is essentially requesting relief from the dismissal order, we limit our review to whether the district court abused its discretion when it denied Burnley's *Rule 60(b)(1)* motion.

*Rule 60(b)(1)* provides that [HN4] "the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect." *FED. R. CIV. P. 60(b)(1)*. [HN5] In order to be granted relief under *Rule 60(b)(1)*, the moving party must demonstrate: "(1) The existence of mistake, inadvertence, surprise, or excusable neglect. (2) That he has a meritorious [*333]defense." *Marshall v. Monroe & Sons, Inc., 615 F.2d 1156, 1160 (6th Cir 1980)* (citations omitted). [HN6] *Rule 60(b)* does not afford defeated litigants a second chance to convince the court to rule in his or her favor by presenting new explanation, new legal theories, or proof. See *Jinks, 250 F.3d at 385* (citing *Couch v. Travelers Ins. Co., 551 F.2d 958, 959 (5th Cir. 1977))*. [**10] [HN7] The courts have defined "neglect" to include "'late filings caused by mistake, inadvertence, or carelessness, as well as intervening circumstances beyond the party's control.'" *Id. at 386* (quoting *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 388, 123 L. Ed. 2d 74, 113 S. Ct. 1489 (1993))*. [HN8] Although *Rule 60(b)(1)* does not define the term "excusable neglect," the courts have determined the existence of excusable neglect by making an equitable determination based upon the following factors: "(1) the danger of prejudice to the other party, (2) the length of

delay, (3) its potential impact on judicial proceedings, (4) the reason for the delay, and (5) whether the movant acted in good faith." *Id.* (citing *Pioneer, 507 U.S. at 395*). However, where the district court granted summary judgment on the merits, rather than on procedural default, these factors are not controlling. See *id., 250 F.3d at 386.* [HN9] "An attorney's inexcusable neglect is normally attributed to his client." *Allen v. Murph, 194 F.3d 722, 723 (6th Cir. 1999)* (citation omitted).

After reviewing Harris's justification for failing to file a timely response, the district court[**11] concluded that Harris inadvertently overlooked the filing deadline. However, the district court concluded that this inadvertence was inexcusable because Bosch would have suffered substantial prejudice if Burnley's *Rule 60(b)(1)* motion were granted. We agree with this determination.

Harris's oversight clearly constituted neglect. Although he demonstrated good faith because he filed for an extension two days after the court granted Bosch's motion for summary judgment. Bosch would have been substantially prejudiced if Burnley's *Rule 60(b)(1)* motion were granted. Bosch already expended substantial resources conducting discovery, and filing its motion for summary judgment. Because the district court previously dismissed Burnley's claims on the merits, it would be unfair to require Bosch to expend additional resources litigating this claim, particularly because Burnley had ample time to conduct discovery, and failed to present evidence substantiating her claim of racial discrimination. Accordingly, we agree with the district court's conclusion that Harris's neglect was inexcusable, and did not warrant relief under *Rule 60(b)(1)*. See *Rice v. Consolidated Rail Corp., 67 F.3d 300, 1995 WL 570911[**12] at **6 (6th Cir. 1995)* (unpublished ) (citing *Kendall v. Hoover Co., 751 F.2d 171, 175 (6th Cir. 1984)* (noting that the failure to respond to a motion for summary judgment is inexcusable neglect)).

We further agree with the district court's conclusion that Burnley failed to establish the "meritorious defense" requirement. [HN10] The courts have defined a meritorious defense as a "defense good at law." *In re Park Nursing Ctr., Inc., 766 F.2d 261, 264 (6th Cir. 1985).* The test is whether "the facts alleged by the [plaintiff] would constitute a meritorious defense if true." *Id.*

[HN11] In order to establish a prima facie case of discrimination, a plaintiff filing a Title VII claim must demonstrate the following: (1) that he or she was a member of a protected class; (2) that he or she suffered an adverse action; (3) that he or she was qualified for the position; and (4) that he or she was replaced by someone outside the protected class or was treated differently from similarly situated members in [*334] an unprotected class. See *Warfield v. Lebanon Corr. Inst., 181 F.3d 723, 728-29 (6th Cir. 1999)*; see also *Talley v. Bravo Pittino Rest., Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995).* [**13]In order to satisfy the fourth prong, the plaintiff must show that she "is similarly situated to the non-protected employee in all relevant respects." *Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 353 (6th Cir. 1998).* "To be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)* (citing *Mazzella v. RCA Global Communications, Inc., 642 F. Supp. 1531, 1547 (S.D.N.Y. 1986)*, aff'd, *814 F.2d 653, (2d Cir. 1987)).*

In her response to Burnley's motion for summary judgment, Burnley relies upon her deposition and Sadler's affidavit in order to substantiate her claim of racial discrimination. After considering Burnley's response, the district court concluded that she failed to substantiate her claim of racial discrimination, and as a result, did not satisfy[**14] the "meritorious defense" requirement. Based upon the evidence, we agree with the district court's conclusion. Although Burnley asserted that she did not yell during her conversation with Krebs, Burnley admitted in her deposition that the conversation "was really getting heated" and that "everyone was getting a little upset." (J.A. at 192, 193.) Moreover, although Burnley asserts that Sadler's conduct was comparable to her own conduct, Burnley acknowledged in her deposition that Sadler did not mimic her word for word, and that Sadler was "speaking from her own point of view." (J.A. at 195.) Additionally, Sadler's affidavit acknowledges that Burnley's tone was different from her own. Sadler also previously told Searcy that Burnley was more agitated than she was. Based upon these facts, we agree with this district court's conclusion that Burnley failed to substantiate her claim of racial discrimination. Accordingly, we believe that Burnley failed to satisfy the "meritorious defense" requirement, and as a result, was properly denied relief under *Rule 60(b)(1).*

Having concluded that Burnley failed to demonstrate the existence of excusable neglect, and failed to present a meritorious defense,[**15] we find that the district court did not abuse its discretion when it denied Burnley's *Rule 60(b)(1)* motion.

III. CONCLUSION

For the foregoing reasons we AFFIRM the district court's judgment.