IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CARMEN CARTER                                       C-1-00-739

    Plaintiff                                  Sr. Judge Arthur Spiegel

vs

THE E. W. SCRIPPS COMPANY

    Defendant

## MOTION TO STRIKE DEFENDANT'S ANSWER
## TO PLAINTIFF'S MOTION TO VACATE

Now comes the Plaintiff, Carmen Carter, pursuant to Federal Rules of Civil Procedure, Rule 12(f), requesting the Court strike the insufficient defense of the Defendant's Memorandum in Opposition to the Plaintiff's Motion to Vacate under the Federal Rules of Civil Procedure 60(b)(1). Pursuant to Rule 12(f) "…upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter."

The cases cited by the Defendant are impertinent and fail to address the standards of Rule 60(b)(1).

Memorandum in support is attached hereto and incorporated by reference and exhibits.

Respectfully submitted,

*Carmen Carter*

Carmen Carter
Plaintiff
419 Probasco Street #7
Cincinnati, OH 45220
(513) 751-5076

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon The E. W. Scripps Company attorney, David Holcombe, Baker & Hostetler, 312 Walnut Street, Cincinnati, OH 45202, this 13th day of February 2004.

*Carmen Carter*

Carmen Carter

IN THE UNITED STATED DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CARMEN CARTER                              C-1-00-739

    Plaintiff                              Sr. Judge Arthur Spiegel

vs

THE E. W. SCRIPPS COMPANY

    Defendant

<u>MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION TO STRIKE</u>

    The Plaintiff, Carmen Carter, in timely fashion, seeks relief from default judgment in the subject case via Federal Rules of Civil Procedure 60(b)(1). She seeks relief from this judgment because she was at the time incapable of responding to the Magistrate's Report and Recommendations, as a result of clinical depression, a disability recognized under the Americans With Disabilities Act.

    Without actually citing it, the Defendant implies the Plaintiff fails to meet the criteria of 60(b)(2) and her motion should not receive consideration because the Plaintiff allegedly presents no new arguments.

1

The Plaintiff specifically requests the Court vacate the default judgment in the subject case under 60(b)(1), which allows relief from a final judgment for mistake, inadvertence, surprise or excusable neglect.

None of the cases cited by the Defendant are pertinent to this case, since none of the cases alluded to involve a moving party impaired in their abilities to think, focus, concentrate or to make decisions.

The Sixth Circuit determines whether relief is warranted on Rule 60(b)(1), based on three factors established in *United Coin Meter Co., Inc. v Seaboard Coastline R.R.,* 705 F.2d 839 (6TH Cir. 1983): (1) whether the party seeking relief is culpable; (2) whether the party seeking relief has a meritorious claim or defense; and (3) whether the opposing party will be prejudiced by vacating the judgment.

Citing *Merriweather v Wilkinson,* 2000 U.S. App. LEXIS 24844 (6th Cir. Nov. 25, 2003), the Defendant, The E. W. Scripps Company, implies that pro se status and lack of legal training are no excuse for failing to file objections to the Magistrate's Report and Recommendations and doesn't "entitle" the Plaintiff to relief under Rule 60(b). In *Merriweather v Wilkinson,* the moving party, a prison inmate, argued that his pro se status and lack of legal training *excused* him from timely filing objections to the

2

Magistrate's Report and Recommendations. However, the Sixth Circuit concluded the moving party "...did not demonstrate the requisite mistake, inadvertence, surprise, or excusable neglect which are required to justify relief pursuant to that rule."

First and foremost, since the withdrawal of the law firm Clodfelter & Gutzwiller, the Plaintiff has been pro se solely because she has been unable to find an employment attorney who didn't require a large sum of cash up front. Regardless, the Plaintiff has never made any such claims of entitlement about her pro se status.

Incredulously, the Defendant cites *Tidwell v Chicago Police,* 2002 U.S. Dist. LEXIS 8262, to suggest that no physical or mental illness is excusable neglect where an individual was able to conduct other business within the same time period.

*Tidwell v Chicago Police* concerns a Rule 60(b)(1) motion filed to vacate a summary judgment because the plaintiff's attorney was ill. The attorney claimed "he was so ill that he could not physically or mentally function". However, upon checking records, the Court discerned this officer of the Court, had filed documents in other ongoing cases during the time period he claimed he was sick.

3

Given the facts of the case, this initially suggests the Defendant is intimating to the Court that the Plaintiff is lying about her condition, and secondly, that if she files *ANY* documents in her defense – she is not ill. The E. W. Scripps Company is emphatically mistaken on both counts.

The Defendant also cites *Rideout v Scott*, 1998 U.S. App. LEXIS 26119 (10th Cir. Oct. 15, 1998), wherein, a prison inmate who was locked in segregation 15 days, filed a motion to vacate default judgment under Rule 60(b)(1). Rideout contended circumstances prevented him from responding to the magistrate's report. Here, the Court concluded that Rideout had requested extensions of time in the past and consequently the Court denied him relief.

CULPABILITY:

Not one of the aforementioned cases is comparable to the subject case, since none of the moving parties was struggling with major depressive disorder.

The Plaintiff seeks relief from this default judgment NOT because she is pro se, but because she was at the time incapable of responding to the Magistrate's Report and Recommendations as a result of clinical depression.

4

Recognizing her disability, she is a Social Security Disability/SSI applicant and is asking the Court for an attorney (exhibit 1).

Contrary to the Defendant's innuendoes, the Plaintiff has no interest in deceiving the Court, and regrettably remains in the throes of clinical depression (exhibit 2, which was prepared for and filed with the Plaintiff's Social Security Administration SSI/Social Security Disability application).

The Plaintiff offers as further substantiation, her redacted admission record to University of Cincinnati Hospital dated in August 1996, indicating "intractable complex partial seizures", along with the diagnosis "major depressive disorder" and recommendations for outpatient treatment (exhibit 3).

Also offered for the Court's perusal is the patient page from the June 18, 2003 issue of The Journal of the American Medical Association, indicating symptoms of major depression include difficulty thinking or concentrating (exhibit 4).

Perhaps most indicative of the Plaintiff's frame of mind is the frustrated effort to file a Motion for Summary Judgment, well after the deadline. That pleading (document 75) twice interjects it was meant to be an interim document. The E. W. Scripps Company appears to want to dictate

"how" the Plaintiff should respond to stress when she is already clinically depressed – whether it's an eviction or a death in the family. As is evident from the Plaintiff's medical report, she was scarcely functional in the months prior to the loss of her father.

Following the funeral of the Plaintiff's father, she was neither coherent nor focused enough to follow up on the Motion for Summary Judgment, let alone respond to the Magistrate's Report and Recommendations. <u>Filing *ANY* documents in the subject case requires a Herculean effort on the part of the Plaintiff, not only because her ability to concentrate is impaired, but also because of the difficulty in carrying tasks to completion.</u>

A party's conduct is culpable if it "displays either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Theodore G. Williams v William Meyer*, 346 F.3d 607; 6th Circuit, 2003 U.S. App. LEXIS 19712 (quoting Amernational Indus. V Action-Tungsram Inc., 925 F.2d 970, 978 (6th Cir. 1991) (quoting INVST Financial Group, Inc. v Chem-Nuclear Systems, Inc., 815 F.2d 391 (6th Cir. 1992).

In *Williams v Meyer*, the Sixth Circuit vacated a default judgment and remanded the case back to U.S. District Court when the plaintiff failed to file objections to the magistrate's report and recommendations. The Sixth Circuit noted:

> The record establishes that in failing to timely file neither Williams nor his counsel engaged in any culpable conduct… Williams' failure to timely file objections does not appear to have been "willful" or the result of "carelessness" or "negligence."

(quoting *Weiss v St. Paul Fire & Marine Insurance Co.*, 283 F.3d 790, 794: 6th Cir. 2002.)

In Amernational Industries v Tungsram, Inc. 925 F.2d 970 (6th Cir. 1991), the defendant repeatedly failed to comply with discovery requests and to pay court-imposed sanctions, but the Court nevertheless concluded the defendant's conduct did not rise to the level of culpability and vacated the default judgment.

The Sixth Circuit Court of Appeals also considered the defendant's lack of reckless disregard for consequences of its actions -- constituted excusable neglect as contemplated under Rule 60(b)(1) in the Amernational case.

7

Further, the seminal case in this circuit on Rule 60(b) – *United Coin Meter Co., Inc. v Seaboard Coastline R.R.,* 705 F.2d 839 (6th Cir. 1983) – contends:

> Where default results from an honest mistake "rather than willful misconduct, carelessness or negligence" there is especial need to apply Rule 60(b) liberally.

Only after the movant can demonstrate the default did not result from culpable conduct, can the Court proceed to consider the other factors.

The Plaintiff prays the Court recognizes illness is the sole reason the Plaintiff did not respond to the Magistrate's Report and Recommendations (and illness is the reason she continues to miss deadlines). Certainly the Court will agree the Plaintiff has met the first burden of *United Coin Meter Co., Inc. v Seaboard Coastline R.R.*

As regards the issue of culpability – the Plaintiff beseeches the Court strike the Defendant's insufficient defense pursuant to Rule 12(f).

## MERITORIOUS DEFENSE

Magistrate Judge Timothy Hogan's conclusion that the Plaintiff's underlying claims "lack merit" should be viewed in the proper context. Magistrate Hogan's statement refers to his decision to deny the Plaintiff's request for In Forma Pauperis, free transcripts and other fees. Without a

8

response from the Plaintiff to the Magistrate's Report and Recommendations, the Plaintiff's "underlying claims" were not before the Court. The Magistrate's statements can not be construed then to refer to Plaintiff's "underlying claims". The aforementioned order has also been appealed by the Plaintiff (see exhibit 1).

The Plaintiff's Motion for Summary Judgment (document 75) was not meant to be all inclusive of her arguments, as the document indicates it is an interim document. Contrary to the Defendant's contention that document 75 offers no new arguments – it indicates that The E. W. Scripps Company moved this case to United States District Court under false pretenses.

In their Notice of Removal (exhibit 5), the Defendant contends:

> "…to the extent that Plaintiff's Complaint seeks to enforce the provisions of the labor contract in effect between Scripps and the guild, Scripps is entitled to remove this action because such allegations of a violation of a collective bargaining agreement between an employer and a labor organization in an industry affecting commerce, are covered by Section 301 of the Labor Management Relations Act, 29 U.S.C. Section 185."

Alleging the Plaintiff's complaint falls under federal law, the Defendant claimed only U.S. District Court has jurisdiction in such matters pursuant to the U.S. Supreme Court's Allis-Chalmers Corp. v Lueck (471 U.S.

9

202). According to the Defendant, the Plaintiff must have standing to challenge an arbitration decision; and to attain standing, the Plaintiff must prove the Cincinnati Newspaper Guild failed to properly represent her.

The Allis-Chalmers Corp. v Lueck decision is not only superceded by Lingle v Norge Division of Magic Chef, Inc. – but Section 301 of the LMRA governs claims based directly on rights created by collective-bargaining agreements and affords preemptive jurisdiction to Federal Courts for any right claimed by a plaintiff requiring interpretation of a collective bargaining agreement.

The Plaintiff's complaint alleging **inadequate counsel** and **arbitrator bias** is not an effort to "enforce provisions of the labor contract..." and includes no "...allegations of a violation of a collective bargaining agreement..." as The E. W. Scripps Company claims in the Notice of Removal.

Further, The E. W. Scripps Company reveals the subterfuge in the Defendant's Motion for Summary Judgment (page 8, paragraph 2) by admitting:

> "...Plaintiff has not even alleged that The Post breached the terms of the collective bargaining agreement..."

10

The right to seek redress for judicial (arbitrator) bias and inadequate counsel representation are not rights *created* by the contract in question, but statutory/Constitutional rights.

Not only has The E. W. Scripps Company moved this case under fraudulent circumstances, but the Allis-Chalmers Corp. v Lueck case requires interpretation of the collective bargaining agreement. The Defendant has yet to cite WHICH sections of the contract must be interpreted to defend this suit.

The Plaintiff seeks redress under the Federal Arbitration Act because: the arbitrator failed to disclose his prior associations with The E. W. Scripps Company; the award was secured through perjured testimony; the arbitrator exceeded his authority; and arbitrator bias.

The rendered award exhibits a manifest disregard of the law because the arbitrator ignored the Americans With Disabilities Act, in violation of public policy.

A letter from the Plaintiff's therapist to the Defendant elicited a written retort contending The Cincinnati Post had no jobs open for which the Plaintiff was qualified. Worse still, the Defendant proffered no defense for violating the ADA. Arbitrator Edward Goggin subsequently claimed it didn't

matter that the Plaintiff was not accommodated as accommodation would "...probably not have helped the grievant...".

The Cincinnati Newspaper Guild failed to choose an arbitrator from a list of Federal Mediation and Conciliation Service arbitrators (as the collective bargaining agreement specifies). This failure was magnified when the Guild failed to ask Arbitrator Goggin about his past association with the Defendant and Defense Counsel – further divesting Plaintiff of substantial rights (exhibit 6). Not only did the Union fail to protect the Plaintiff's interests by assuring an impartial arbitrator, but the Plaintiff was uninformed and therefore unable to oppose the selection of Goggin as the arbitrator on the record.

As an employee of The E. W. Scripps Company, there was no due process in so-called "disciplinary" meetings when the Defendant arrived with prepared memos in-hand to suspend the Plaintiff. Clearly Guild Counsel's belief that the Plaintiff was "guilty" impacted the caliber of representation she received (exhibit 7).

In *Jayedeane Thompson v American Home Assurance Company*, 95 F.3d 429; 1996 U.S. App. LEXIS 23889, the Sixth Circuit cites *INVST Financial Group*, 815 F.2d at 398-399 quantifying a meritoroious defense:

12

> ...in order to establish a "meritorious defense," the defendant must state "a defense good at law" which is sufficient if it contains "even a hint of a suggestion which, proven at trial, would constitute a complete defense."

The Plaintiff prays the Court agrees she meets the second of three factors to be balanced equitably (under *United Coin Meter Co., Inc. v Seaboard Coastline R.R.*) that the Plaintiff establishes a meritorious defense. She further requests the Court strike The E. W. Scripps Company's Memorandum in Opposition to the Plaintiff's Motion to Vacate, pursuant to Federal Rules of Civil Procedure Rule 12(f).

## ABSENCE OF SUBSTANTIAL PREJUDICE TO THE DEFENDANT

Contrary to the Defendant's "insightful" claims about the Plaintiff's motives – the Plaintiff is before the Court solely in search of justice.

Here, The E. W. Scripps Company claims that granting the Plaintiff's motion to vacate will drive up their defense litigation costs. Ironically, had the Plaintiff been well enough to respond to the Magistrate's Report and Recommendations, the process would hardly have saved them any greenbacks: as the Plaintiff would've filed her comments; the Defendants would've responded; and Senior Judge S. Arthur Spiegel would've still made the decision whether to accept the report.

13

These are the same interim steps the Plaintiff is now asking the Court to grant: vacate the default judgment under Federal Rules of Civil Procedure Rule 60(b)(1) for excusable neglect, which has been timely filed, and with the assistance of an attorney the Plaintiff has asked the Court to appoint, allow her to respond to the magistrate's report; then allow the Defendant to respond.

Obviously, the Defendants inflated claims of costly legal expenses does not pass the issue of substantial prejudice.

While in the chambers of Senior Judge Herman Weber on the Plaintiff's sister-case (C-1-00-977) on June 18, 2002, Judge Weber urged the parties to settle and offered his chambers to pursue the possibilities. Defense Counsel declined, noting his client wasn't present. However, Morris Williams of IMPACT Ohio, who also attended the meeting, exchanged business cards with Defense Counsel. Mr. Williams phoned Defense Counsel several times to discuss arranging a meeting to no avail.

Not until Mr. Williams E-mailed Defense Counsel a letter indicating he had been unable to reach Defense Counsel and cc'd a copy of the letter to Judge Weber (exhibit 8) was there any response. The Defendant responded that there was a preference for mediation through U.S. District Court. Even

14

this was a half-hearted effort, as it was the Plaintiff, who arranged for the instant case to be included in the mediation as indicated by item 42 of the case docket (exhibit 9).

Subsequently, The E. W. Scripps Company submitted a mediation statement (exhibit 10) contending that the Plaintiff's independent settlement effort (via letter in April 2002) to settle for back pay $125,000, plus pension and medical benefits was excessive.

On page 4 of exhibit 10, The E. W. Scripps Company revealed its disincentive to mediate:

> "...While Defendant remains willing to consider a settlement demand in order to save it from expending additional time and resources on these matters, Defendant vigorously denies Plaintiff's allegations, and believes that, if not resolved sooner, Plaintiff's claims will be dismissed on summary judgment."

The Defendant remained true to that disingenuous approach to mediation. When the Plaintiff asked for back pay, another job within the Defendant's multimedia empire and dropped the request for medical benefits – the Defendant made an "offer" of $10,000 in salary; $1,000 at a employment search firm; and an ambiguous letter of reference. Inasmuch as the Plaintiff became ill at that juncture -- that is where the mediation ended.

15

The Court should put little stock in the Defendant's opining about litigation costs. The E. W. Scripps Company has a history of disparately disciplining minorities and using alleged disciplinary actions/discrimination as a pretext to demote or discharge.

Alleging disparate treatment and discrimination, in 1987, Myron Lowery Jr. won a $274,120 lawsuit against Scripps Howard Broadcasting (*Myron Lewis Lowery Jr. v WMC-TV*, 658 F. Supp. 1240; 1987 U.S. Dist. LEXIS 3013). In December 1999, Cheryl Dickson, an Emmy-award winning producer won a $1.25 million lawsuit, also accusing the Defendants of disparate treatment and discrimination (Cheryl Dickson v Scripps Howard Broadcasting Company and WEWS-TV 5, Court of Common Pleas, Cuyahoga County, OH Case No. 328680).

This suggests that even when faced with scathing countervailing evidence, the propensity of the Defendant in court is not only to not settle the case, but rather to dig in their heels. Viewed from that vantage point, The E. W. Scripps Company's claim of concern about the cost of litigation appears empty.

16

The Plaintiff emphatically urges the Court to strike the Defendant's Memorandum in Opposition to the Plaintiff's Motion to Vacate as insufficient defense.

## JURISDICTION

The Plaintiff seeks resolution of any question of jurisdiction with the Motion for Jurisdictional Remand to the Sixth Circuit (exhibit 11). Heretofore, the Sixth Circuit has stayed briefing on the merits of Plaintiff's appeal pending a decision on the Defendant's Motion to Dismiss. The Plaintiff had requested the Sixth Circuit stay any decision regarding the Defendant's Motion to Dismiss, pending the outcome of this Court's decision on Plaintiff's Motion to Vacate.

Because Federal Rules of Civil Procedure Rule 60(b) is invoked to set aside a default judgment, the court must both consider the Rule 55 equitable factors as enumerated in United Coin Meter, 705 F.2d at 845 and find that one of the specific requirements is met, (according to Waifersong Ltd., Inc. v Classic Music Vending, 976 F.2d at 290 (6th Cir. 1992)).

The Plaintiff believes she has fulfilled the three requirements of *United Coin*, and respectfully requests the Court grant the Plaintiff's timely Motion to Vacate the judgment in the subject case under Rule 60(b)(1), with

17

the proposed limited remanded jurisdiction through the Sixth Circuit. She further beseeches the Court grant her permission to respond to the Magistrate's Report and Recommendations. Consequently, the Plaintiff asks the Court to strike the insufficient defense of the Defendant's Memorandum in Opposition to the Plaintiff's Motion to Vacate, pursuant to Federal Rules of Civil Procedure 12(f).

                                                Respectfully submitted,

                                                Carmen Carter
                                                Plaintiff
                                                419 Probasco Street #7
                                                Cincinnati, OH 45220
                                                (513) 751-5076

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing has been served upon the Defendant's Attorney, David Holcombe, Baker & Hostetler, 312 Walnut Street, Cincinnati, OH 45202, via ordinary U.S. mail this 14th day of February 2004.

                                            Carmen Carter

18