MELVA E. NEWSOM, Plaintiff, vs. XENIA CITY SCHOOL DISTRICTBOARD OF EDUCATION and ROBERT E. WILLIAMS, SUPERINTENDENT, XENIA CITY SCHOOLDISTRICT, Defendants.
Case No. C-3-95-173

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OFOHIO, WESTERN DIVISION

1996 U.S. Dist. LEXIS 20267

March 25, 1996, Decided
March 25, 1996, FILED

SUBSEQUENT HISTORY: *Affirmed by Newsom v. Bd. of Educ. of Xenia City Sch. Dist., 2003 U.S. App. LEXIS 3984* (6th Cir. Ohio, Mar. 4, 2003)

DISPOSITION: [*1] Defendants' Motion to Dismiss (Doc. # 5) OVERRULED in regard to Defendant Board's liability for punitive damages under Count Seven. Defendant's Motion to Strike Exhibits to and Portions of Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss (Doc. # 9) OVERRULED. Defendants' Motion to Dismiss (Doc. # 5) SUSTAINED in part: Counts Five and Six dismissed; all claims in regard to Defendant Williams dismissed and said Defendant dismissed as party to this litigation and Plaintiff's request for punitive damages in regard to Counts One, Two and Seven against Defendant Board of Education dismissed. Defendants' Motion to Dismiss (Doc. # 5) OVERRULED in part: Counts One and Two remained viable in regard to alleged 1991 violation against Defendant Board; Count Seven remained viable against Defendant Board and Plaintiff's request for punitive damages in regard to Counts Three and Four against Defendant Board of Education remained viable. Leave to file Amended Complaint subject to strictures of *Rule 11 of Federal Rules of Civil Procedure* granted

CASE SUMMARY:

PROCEDURAL POSTURE: Defendants, board of education and superintendent, filed a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)* (failure to state a claim upon which relief could be granted) plaintiff employment applicant's race discrimination claims under Title VII, *Ohio Rev. Code Ann. § 4112.02*, and *42 U.S.C.S. §§ 1981*, 1983, and her promissory estoppel claim. They also filed a motion to strike exhibits to and portions of the applicant's memorandum in opposition.

OVERVIEW: The court presumed that the motion to strike was brought under *Fed. R. Civ. P. 12(f)*, which, however, applied to pleadings, not to memoranda in opposition. The court held that the applicant's allegations were sufficient to allow the application of a continuing violation theory to the alleged 1991 violation, and in her Equal Employment Opportunity Commission charge, the applicant sufficiently set forth the facts which comprised the alleged continuing violation, namely, that she was denied positions for employment in both 1991 and 1992, so she did not fail to exhaust her administrative remedies. The *42 U.S.C.S. §§ 1981*, 1983 claims were time-barred by *Ohio Rev. Code Ann. § 2305.10*, where the applicant failed to allege the occurrence of any discriminatory act within the two years preceding the filing of her complaint. The promissory estoppel claim, which was based on the school district secretary's representation that the applicant had been selected for a position, was sufficient for purposes of the motion to dismiss. The superintendent could not be liable under any of the claims. The board was immune from liability for punitive damages in the Title VII and promissory estoppel claims.

OUTCOME: The court overruled the motion to strike. The court sustained the motion to dismiss as to the constitutional claims, all claims against the superintendent, and the requests for punitive damages in regard to the Title VII and promissory estoppel claims. The court overruled the motion to dismiss as to the Title VII claims, promissory estoppel claims, and the punitive damages requests in regard to the state discrimination claims against the board.

CORE TERMS: punitive damages, supervisor, continuing violation, discriminatory, teacher, secretary, promissory estoppel, statute of limitations, sexual harassment, respondeat superior liability, race discrimination, prong, work environment, hire, teaching, opening, administrative remedies, individual liability, hostile, unsafe, motion to dismiss, ongoing, limitations period, motions to strike, second category, school board, over-arching, two-year, political subdivision, individually liable

LexisNexis (TM) HEADNOTES - Core Concepts:


EXHIBIT
A

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Motions to Strike
[HN1] *Fed. R. Civ. P. 12(f)* provides that upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Motions to strike may only be made in relation to pleadings, which are defined by *Fed. R. Civ. P. 7(a)* as including the following documents: complaints, answers, replies to counter-claims, answers to cross-claims, third-party complaints, and third-party answers. Under the Federal Rules of Civil Procedure, motions are not pleadings, and therefore are not subject to motions to strike under Rule 12(f).

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Failure to State a Cause of Action
[HN2] Under the standard for ruling upon *Fed. R. Civ. P. 12(b)(6)* motions, a court will not consider matters outside the pleadings, that is, documents not attached thereto.

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Motions to Dismiss
Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Failure to State a Cause of Action
[HN3] On a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*, a court accepts as true all of the allegations in plaintiffs' pleadings, and determines whether it appears beyond doubt that plaintiffs can prove no set of facts in support of their claim which would entitle them to relief.

Constitutional Law: Civil Rights Enforcement: Civil Rights Generally
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1964
Labor & Employment Law: Discrimination: Title VII
[HN4] There are two categories of claims which constitute continuing violations. The first category arises where there is evidence of present discriminatory activity, that is, where an employer continues to presently impose disparate work assignments or pay rates between similarly situated employee groups, and at least one incident occurred outside of the relevant statute of limitations period. This category applies only to continually recurring acts which constitute discriminatory violations, rather than to the continuing effects of past discriminatory acts. The second category arises where there has been a longstanding and demonstrable policy of discrimination, such as an established and repeated pattern, not merely the occurrence of an isolated incident of discrimination. A plaintiff must provide some evidence that the defendant intentionally discriminated against the protected class as part of its standard operating procedure. Unrelated incidents of discrimination will not suffice to invoke the exception.

Constitutional Law: Civil Rights Enforcement: Civil Rights Generally
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1964
Labor & Employment Law: Discrimination: Title VII
[HN5] A continuing violation may be found where an ongoing discriminatory policy results in a failure to hire or promote an applicant or employee.

Constitutional Law: Civil Rights Enforcement: Civil Rights Generally
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1964
Labor & Employment Law: Discrimination: Title VII
[HN6] A continuing violation theory can be maintained in federal court, even though it is not specifically alleged in the Equal Employment Opportunity Commission (EEOC) charge, as long as that theory is evidenced (apparent from the facts alleged) in the EEOC charge.

Constitutional Law: Civil Rights Enforcement: Civil Rights Generally
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Coverage
Governments: Legislation: Statutes of Limitations: Time Limitations
[HN7] The two-year statute of limitations contained in *Ohio Rev. Code Ann. § 2305.10* is held to govern actions brought under *42 U.S.C.S. §§ 1981, 1983*.

Constitutional Law: Civil Rights Enforcement: Civil Rights Generally
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1871: Coverage
Governments: Legislation: Statutes of Limitations: Time Limitations
[HN8] The continuing violation doctrine will only apply if at least one allegedly discriminatory act occurred within the relevant statute of limitations, regardless of which category applies. The first category of continuing violation arises where there is some evidence of present discriminatory activity. This category requires a current as well as continuing violation: at least one of the forbidden discriminatory acts must have occurred within the relevant limitations period. The second category of continuing violation arises where there has occurred a longstanding and demonstrable policy of discrimination.

Without a specific, allegedly discriminatory act against plaintiffs within the limitations period, mere existence of an alleged policy of violating equal protection rights will not toll the running of the statute of limitations.

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Motions to Dismiss
Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Failure to State a Cause of Action
[HN9] When ruling upon a motion to dismiss brought under *Fed. R. Civ. P. 12(b)(6)*, a court presumes all of the allegations in the complaint to be true, and determines whether it appears beyond doubt that a plaintiff can prove no set of facts in support of her claim which would entitle her to relief.

Constitutional Law: Civil Rights Enforcement: Civil Rights Generally
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1964
Labor & Employment Law: Discrimination: Actionable Discrimination
[HN10] Title VII prohibits employment-related discrimination, and imposes liability on employers.

Constitutional Law: Civil Rights Enforcement: Civil Rights Generally
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1964
Labor & Employment Law: Discrimination: Actionable Discrimination
[HN11] Title VII defines the term "employer" as a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such a person. *42 U.S.C.S. § 2000e*(b). The Sixth Circuit defines the term "agent" to mean an individual who serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing, or conditions of employment.

Constitutional Law: Civil Rights Enforcement: Civil Rights Generally
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1964
Labor & Employment Law: Discrimination: Actionable Discrimination
[HN12] A supervisor may be sued under Title VII only in his official capacity, for purposes of imposing respondeat superior liability on the employer, and not in his individual capacity.

Constitutional Law: Civil Rights Enforcement: Civil Rights Generally

Labor & Employment Law: Discrimination: Title VII
[HN13] See *Ohio Rev. Code Ann. § 4112.02(A)*.

Constitutional Law: Civil Rights Enforcement: Civil Rights Generally
Labor & Employment Law: Discrimination: Title VII
[HN14] For purposes of *Ohio Rev. Code Ann. § 4112.02(A)*, an "employer" is defined as the state, any political subdivision of the state, any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of the employer. *Ohio Rev. Code Ann. § 4112.01(A)(2)*.

Labor & Employment Law: Discrimination: Racial Discrimination: Remedies
Constitutional Law: Civil Rights Enforcement: Civil Rights Generally
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1964
[HN15] See *42 U.S.C.S. § 1981a*(b)(1).

Labor & Employment Law: Discrimination: Racial Discrimination: Remedies
Constitutional Law: Civil Rights Enforcement: Civil Rights Generally
Constitutional Law: Civil Rights Enforcement: Civil Rights Act of 1964
Constitutional Law: Civil Rights Enforcement: Immunity: Public Officials
[HN16] A board of education qualifies as a "political subdivision" within the meaning of *42 U.S.C.S. § 1981a*, and is therefore immune from liability for punitive damages in Title VII claims.

Contracts Law: Remedies: Punitive Damages
[HN17] Punitive damages are not available for breach of contract claims.

COUNSEL: For MELVA ELIZABETH NEWSOM aka Cookie Newsom, plaintiff: Joanne J Ervin, Dayton, OH. Lynn Whitney Turner, Turner Law Office, Hillsboro, [*2] OH.

For XENIA CITY SCHOOL DISTRICT BOARD OF EDUATION, ROBERT E WILLIAMS, Superintendent, Xenia City School District, defendants: Nicholas Edward Subashi, Jenks, Surdyk & Cowdry Co. - 3, Dayton, OH.

JUDGES: WALTER HERBERT RICE, UNITED STATES DISTRICT JUDGE

OPINIONBY: WALTER HERBERT RICE

OPINION: DECISION AND ENTRY OVERRULING DEFENDANTS' MOTION TO STRIKE EXHIBITS TO AND PORTIONS OF PLAINTIFF'S MEMORANDUM

IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (DOC. # 9); DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING PART DEFENDANTS' MOTION TO DISMISS (DOC. # 5); DEFENDANT WILLIAMS IS DISMISSED AS A PARTY DEFENDANT TO THIS ACTION; LEAVE TO FILE AN AMENDED COMPLAINT GRANTED

This case arises from circumstances surrounding the alleged failure to hire Plaintiff Melva E. Newsom, on two occasions in 1991 and 1992. Plaintiff is an African-American teacher who had previously been employed by the Xenia City School District. Plaintiff sues both Defendant Xenia City School District Board of Education ("Board") and Defendant Robert E. Williams, Superintendent of the Xenia City School District ("Williams"), on the following claims: Title VII race discrimination, based on a disparate treatment theory (Count[*3] One); Title VII race discrimination, based on a disparate impact theory (Count Two); a state-law claim of race discrimination under O.R.C. § 4112.02, based on a disparate treatment theory (Count Three); a state-law claim of race discrimination under O.R.C. § 4112.02, based on a disparate impact theory (Count Four); race discrimination in violation of *42 U.S.C. § 1981* and the Thirteenth and Fourteenth Amendments to the United States Constitution (Count Five); race discrimination in violation of *42 U.S.C. § 1983* and the Thirteenth and Fourteenth Amendments to the United States Constitution (Count Six); and a state-law claim for promissory estoppel (Count Seven).

This Court has federal question jurisdiction, pursuant to *28 U.S.C. § 1331*, over Counts One, Two, Five and Six. In addition, this Court may properly exercise its supplemental jurisdiction, pursuant to *28 U.S.C. § 1367*, over Counts Three, Four and Seven, as these claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

Currently pending before this Court are two motions. First, Defendants have filed a Motion to Dismiss (Doc. [*4] # 5) the following portions of Plaintiff's Complaint under *Rule 12(b)(6) of the Federal Rules of Civil Procedure*, for failure to state a claim upon which relief can be granted: Counts One and Two in regard to the alleged 1991 violation; Count Five; Count Six; Count Seven; all of Plaintiff's claims against Defendant Williams; and Plaintiff's request for punitive damages. Second, Defendants have filed a Motion to Strike (Doc. # 9) various exhibits to and portions of Plaintiff's Memorandum in Opposition (Doc. # 6) to Defendants' Motion to Dismiss (Doc. # 5). This Court will take up these motions in reverse order.

I. Defendants' Motion to Strike Exhibits to and Portions of Plaintiff's Memorandum in Opposition to Motion to Dismiss (Doc. # 9)

Defendants have moved to strike (Doc. # 9) exhibits to and portions of Plaintiff's Memorandum in Opposition (Doc. # 6) to Defendants' Motion to Dismiss (Doc. # 5), arguing that Plaintiff improperly attached four exhibits to her Memorandum in Opposition which were not attached to her Complaint, and which therefore should not be considered when ruling upon this Motion to Dismiss under Rule 12(b)(6), and that the Memorandum in Opposition[*5] contains numerous factual assertions not present in the Complaint. Since Defendants have failed to specify the source of this Court's authority to strike these exhibits and portions of Plaintiff's Memorandum, this Court will presume that Defendants are bringing their Motion to Strike under [HN1] *Rule 12(f) of the Federal Rules of Civil Procedure*, which provides:

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

The plain language of this Rule indicates that motions to strike may only be made in relation to pleadings, which are defined by *Rule 7(a) of the Federal Rules of Civil Procedure* as including the following documents: complaints, answers, replies to counter-claims, answers to cross-claims, third-party complaints, and third-party answers. It is clear that under the Federal Rules of Civil Procedure, motions are not pleadings, [*6] and therefore are not subject to motions to strike under Rule 12(f). See, e.g., *Searcy v. Social Security Admin., No. 91-4181, 1992 WL 43490*, at *2 (10th Cir. 1992) ("there is no provision in the Federal Rules of Civil Procedure for motions to strike motions and memoranda"); *Wimberly v. Clark Controller Co., 364 F.2d 225, 227 (6th Cir. 1966)* (Rule 12(f) "specifically relates to matters to be stricken from pleadings but does not make provision for testing the legal sufficiency of affidavits by a motion to strike"); *Dawson v. City of Kent, 682 F. Supp. 920, 922 (N.D. Ohio 1988)* (Rule 12(f) "relates only to pleadings and is inapplicable to other filings"), aff'd *865 F.2d 257 (6th Cir. 1988)*; *Ernst Seidelman Corp. v. Mollison, 10 F.R.D. 426, 427 (S.D. Ohio 1950)* ("Rule 12(f) is applicable only to motions to strike portions of 'pleadings.'").

Therefore, because Rule 12(f) does not provide a proper basis for striking exhibits to and portions of

Plaintiff's Memorandum in Opposition (Doc. # 6), Defendants' Motion to Strike (Doc. # 9) is OVERRULED. However, this Court assures both parties that it will not consider any factual allegations which are not set forth[*7] in the Complaint, and that its analysis of Defendants' Motion to Dismiss will adhere to [HN2] the proper standard for ruling upon 12(b)(6) motions, under which this Court will not consider matters outside the pleadings, that is, documents not attached thereto.

## II. Defendants' Motion to Dismiss (Doc. # 5)

As noted, Defendants have moved to dismiss the following portions of Plaintiff's claims: Counts One and Two in regard to the alleged 1991 violation; Count Five; Count Six; Count Seven; all of Plaintiff's claims against Defendant Williams; and Plaintiff's claims for punitive damages. After setting forth the applicable standard to be followed when ruling upon motions brought under *Rule 12(b)(6) of the Federal Rules of Civil Procedure*, this Court will set forth the facts which gave rise to this lawsuit, as alleged in the Complaint, and will then proceed to the merits of the Defendants' Motion to Dismiss.

[HN3] On a motion to dismiss under Rule 12(b)(6), the Court accepts as true all of the allegations in the Plaintiffs' pleadings, and determines whether "it appears beyond doubt that the Plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] [*8] to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).* Unless the Court is satisfied that this Plaintiff can prove no set of facts entitling her to relief, the motion to dismiss will be denied.

### A. Factual Allegations in the Complaint (Doc. # 1)

Plaintiff Newsom alleges that she was employed by Defendant Board as a teacher from 1973 to 1989, at which time she resigned to pursue a master's degree (Doc. # 1, P2). She completed her degree in June, 1991 (Id., P22).

In April of 1991, Plaintiff became aware of a job posting for an American history teacher at the Xenia High School (Id., P21). She informed the principal and assistant principal of the Xenia High School that she was interested in the position, and followed up with a letter of interest (Id.). During the week of June 17, 1991, the secretary to the Xenia City School District's Director of Personnel telephoned Plaintiff, indicated that she had been selected for the position, and instructed her to come in and complete the necessary paperwork (Id.). When Plaintiff returned to Xenia a day early from a conference to sign the paperwork, she was informed by her husband

that[*9] the Director of Personnel had informed him in a telephone conversation that the position had been offered to a white male (Id.).

In May of 1992, Plaintiff learned of a job opening for a social studies teacher at Central Junior High School, but was unaware of either the specific qualifications or the salary (Id., P24). After submitting an application for this position, Plaintiff was granted an interview for that position, scheduled to take place on June 23, 1992. On June 19, 1992, Plaintiff was contacted by the secretary to the Director of Personnel and asked whether she was certified to teach geography; Plaintiff stated that she was not (Id., P25). At her interview, Plaintiff was informed by Central's principal that although her lack of certification in geography was problematic, the other members of the social studies department could teach geography, and Plaintiff could assume their responsibilities for teaching history (Id., P26). By a letter dated July 1, 1992, Plaintiff was informed that the position had been offered to another applicant; Plaintiff later learned that it had been offered to a white female, who allegedly had less experience and inferior qualifications[*10] (Id., P27).

On August 3, 1992, Plaintiff filed a charge of discrimination based on race with the Equal Employment Opportunity Commission ("EEOC") (Id., Exh. A). In that charge, she stated that she had been denied positions in 1991 and 1992. Plaintiff received a Notice of Right to Sue letter, dated January 31, 1995 (Id., Exh. B), and brought this suit on April 28, 1995.

### B. Counts One and Two (Title VII) in regard to 1991 violation

Defendants have moved to dismiss Plaintiff's claims under Title VII (Counts One and Two) in regard to the alleged 1991 discriminatory failure to hire, arguing that this claim is barred by Plaintiff's failure to exhaust her administrative remedies, because Plaintiff failed to file her EEOC charge within 300 days of this incident. *42 U.S.C. § 2000e-5.* In response, Plaintiff argues that the "continuing violation doctrine" is applicable to the 1991 incident.

The Sixth Circuit has described [HN4] two categories of claims which constitute continuing violations. See, e.g., *Dixon v. Anderson, 928 F.2d 212 (6th Cir. 1991)* (describing these categories). The first category arises where there is evidence of present discriminatory activity, [*11] "i.e., where an employer continues to presently impose disparate work assignment[s] or pay rates between similarly situated employee groups," and at least one incident occurred outside of the relevant statute of limitations period. *Anderson v. City of Bristol,*

6 F.3d 1168, 1175 (6th Cir. 1993) (quoting *EEOC v. Penton Indus. Publishing Co., 851 F.2d 835 (6th Cir. 1988)).* This category applies only to continually recurring acts which constitute discriminatory violations, rather than to the continuing effects of past discriminatory acts. *Dixon, 928 F.2d at 216.*

The second category arises "where there has been a longstanding and demonstrable policy of discrimination, such as an established and repeated pattern... not merely the occurrence of an isolated incident of discrimination." Id. Plaintiff must provide some evidence that the defendant intentionally discriminated against the protected class as part of its "standard operating procedure." *EEOC, 851 F.2d at 838.* "Unrelated incidents of discrimination will not suffice to invoke this exception; rather, there must be a continuing 'over-arching policy of discrimination.'" *Dixon, 928 F.2d at 217* (quoting[*12] *Janikowski v. Bendix Corp., 823 F.2d 945, 948 (6th Cir. 1987)).*

The Sixth Circuit has specifically held that [HN5] a continuing violation may be found where an ongoing discriminatory policy results in a failure to hire or promote an applicant or employee:

An applicant for employment or promotion will, in many circumstances, be interested in any suitable position which opens up. As job openings become available, the applicant will automatically be rejected because of his/her race, sex or national origin... We do not think that Title VII requires that suit be filed when the applicant is initially discriminated against. If an ongoing discriminatory policy is in effect, the violation of Title VII is ongoing as well.

*Roberts v. North American Rockwell Corp., 650 F.2d 823, 827 (6th Cir. 1981),* cited in *Dixon, 928 F.2d at 217* ("where there has been a long-standing policy of discrimination, repeated attempts to gain employment or promotions may each trigger the running of a new limitations period").

This Court now turns to the allegations in Plaintiff's Complaint, to determine whether they fall under either of these two categories. Since this Court[*13] finds that Plaintiff's allegations are sufficient to state a claim under the second category, which applies where there exists an over-arching policy of discrimination, this Court does not consider whether Plaintiff's allegations are also sufficient to state a claim under the first category, for present discriminatory activity.

In her Complaint, Plaintiff alleges that during the years in which she applied for employment, 1991 and 1992, the Defendants "had employment policies, procedures and practices that had the effect of excluding a disproportionately high number of African-Americans from teaching positions," including:

(a) Failing or refusing to prepare and/or make public the job description, job elements, and/or job requirements for each available District teaching position or opening;

(b) Selecting persons for District teaching positions in the absence of a formal application and interview process;

(c) Failing or refusing to include persons of color on District committees or other groups charged with selecting persons to fill open teaching positions;

(d) Relying on word of mouth to publicize openings for District teaching positions;

(e) Setting the requirements for District[*14] teaching positions after applicants have submitted their materials;

(f) Utilizing subjective criteria in making teacher hiring decisions;

(g) Recruiting for new teachers on college campuses that have an insubstantial African-American student enrollment;

(h) Utilizing subjective criteria to selectively reposition teachers to permit the hiring of teacher applicants who are not certified to teach subjects for which there are posted openings; and

(i) Utilizing subjective criteria to waive certification requirements to permit the hiring of teachers who are not certified to teach subjects for which there are posted openings.

Doc. # 1, Exh. A, P43-44. Although Defendants have argued that Plaintiff cannot successfully assert a continuing violation because she did not specifically include an allegation of ongoing discrimination in her Complaint, this Court finds, for purposes of this Motion to Dismiss, that the above-quoted allegations can be read to infer an allegation of a policy of demonstrable and over-arching discrimination. Therefore, as in Roberts, Plaintiff's repeated attempts to seek employment, coupled with her allegations of an over-arching policy of discrimination, [*15] suffice to state a claim under the second category of the continuing violation doctrine. n1

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -
- - -

n1 Although the plaintiff in Roberts apparently did seek employment on more than two occasions, unlike the Plaintiff in this case, this Court is not persuaded by Defendants' argument that Plaintiff Newsom therefore did not "continually apply" for employment, because this Court sees no principled justification for distinguishing between plaintiffs who apply two, three, five or ten times for employment.

- - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Now that this Court has determined that Plaintiff's allegations are sufficient to allow the application of a continuing violation theory to the alleged 1991 violation, this Court must address Defendants' argument that the continuing violation doctrine does not allow the Plaintiff to incorporate the 1991 incident into the 1992 EEOC charge, because she failed to exhaust her administrative remedies.

The Sixth Circuit has held that [HN6] "a continuing violation theory can be maintained in federal court, even though it is not[*16] specifically alleged [in the EEOC charge], as long as that theory is evidenced [apparent from the facts alleged] in the EEOC charge." *Haithcock v. Frank, 958 F.2d 671, 676 (6th Cir. 1992).* The plaintiff in Haithcock had set forth the dates and descriptions of several allegedly discriminatory incidents in his initial complaint--only one of which fell within the relevant statute of limitations--but failed to allege either a continuing violation theory or a "pattern or practice" of discrimination. Nevertheless, the Sixth Circuit found that the plaintiff had successfully exhausted his administrative remedies, because he had set forth the facts comprising the continuing violation in his charge of discrimination. *Id. at 676-77.*

In this case, Plaintiff made the following allegations in her EEOC charge:

I am Black. I worked in the school system for 18 years when I left in 1989 to pursue a Master's Degree. I re-applied for a position in 1991. I was denied positions. The most recent denial was on 6-26-92 for the position of Social Studies teacher in the Junior High School.

Doc. # 1, Exh. A. Although Plaintiff did not allege either a continuing violation theory, [*17] or a "pattern or practice" of discrimination, in her EEOC charge, she did

sufficiently set forth the facts which comprise the alleged continuing violation, namely, that she was denied positions for employment in both 1991 and 1992. Therefore, as in Haithcock, Plaintiff did not fail to exhaust her administrative remedies.

Accordingly, because Plaintiff's allegations support the application of a continuing violation theory to the alleged 1991 violation, and because Plaintiff did not fail to exhaust her administrative remedies with respect to this claim, Defendants' Motion to Dismiss (Doc. # 5) Counts One and Two in regard to the alleged 1991 violation is OVERRULED. n2

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n2 Defendants have further argued that Plaintiff failed to allege in her Complaint that she actually applied for a teaching position in 1991. Taking the allegations in Plaintiff's Complaint as true, and drawing all reasonable inferences in her favor, this Court finds, for purposes of this Motion to Dismiss, that Plaintiff has alleged facts sufficient to support a claim that she applied for employment in 1991. Defendants may choose, however, to renew this argument at a later date in the form of a properly documented motion for summary judgment.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*18]

C. Counts Five (§ 1981) and Six (§ 1983)

In Counts Five and Six, Plaintiff has set forth claims under *42 U.S.C. § 1981* and § 1983, respectively, based upon alleged violations of her civil rights in violation of the Thirteenth and Fourteenth Amendments to the United States Constitution. Defendants have moved to dismiss these Counts, arguing that they are barred by [HN7] the applicable two-year statute of limitations contained in O.R.C. § 2305.10, which has been held to govern actions brought under both § 1983 and § 1981. See *Browning v. Pendleton, 869 F.2d 989 (6th Cir. 1989)* (holding that the two-year statute of limitations in § 2305.10 applies to actions arising in Ohio under § 1983); *Harris v. Board of Educ. of Columbus, 798 F. Supp. 1331 (S.D. Ohio 1992)* (holding that the two-year statute of limitations in §

2305.10 applies to actions brought under § 1981 and § 1983).

Since the last incident alleged in Plaintiff's Complaint occurred in July, 1992, and since Plaintiff did not bring suit until nearly three years later, on April 28, 1995, these claims would appear to be time-barred. Plaintiff, however, argues that her claims are valid under a continuing[*19] violation theory, because a violation occurs each day that an unlawful policy of discrimination is in effect, and the statute of limitations therefore does not begin to run until the last day of the allegedly unlawful policy.

Importantly, however, the Sixth Circuit has clearly held that [HN8] the continuing violation doctrine will only apply if at least one allegedly discriminatory act occurred within the relevant statute of limitations, regardless of which category applies:

The first category of continuing violation arises where there is some evidence of present discriminatory activity ... this category requires a 'current' as well as 'continuing' violation: at least one of the forbidden discriminatory acts must have occurred within the relevant limitations period....

The second category of 'continuing violation' arises where there has occurred 'a longstanding and demonstrable policy of discrimination'... It should be clear that without a specific, allegedly discriminatory act against [plaintiffs] within the limitations period, mere existence of an alleged policy of violating equal protection rights will not toll the running of the statute of limitations.
[*20]

*Dixon, 928 F.2d at 216-17* (citations omitted) (emphasis added); *see also Haithcock, 958 F.2d at 677* ("where there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period") (emphasis added). Therefore, because Plaintiff has failed to allege the occurrence of any discriminatory act within the two years preceding the filing of her Complaint, a continuing violation theory is not applicable, and her claims brought under § 1981 and § 1983 are barred by the relevant two-year statute of limitations. Accordingly, Defendants' Motion to Dismiss (Doc. # 5) is SUSTAINED in regard to Counts Five and Six. n3

- - - - - - - - - - - - - - - - - - Footnotes- - - - - - - - - - - - - - - - - -

n3 Since this Court has found that Counts Five and Six are barred by the relevant statute of limitations, this Court does not, because it need not, reach Defendants' argument that Count Six ( § 1983) is barred because it is based solely on an alleged violation of Title VII.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*21]

D. Count Seven (Promissory Estoppel)

Plaintiff bases her promissory estoppel claim on the following allegations in her Complaint: the secretary to the District Personnel Director was an agent of the Defendants (Doc. # 1, P82); in June of 1991, this agent represented to Plaintiff that she had been selected for a teaching position and should report to the District office to sign her contract (Id.); Defendants should have reasonably expected their agent's representations to induce Plaintiff to return to Greene County (the location of the District office) to sign her contract (Id., P83); in reliance upon the agent's representation, Plaintiff cut short, by one day, her participation in a conference in order to return to Greene County (Id., P84); Plaintiff learned upon her return that the position had been offered to and accepted by another applicant (Id., P84); as a result of this incident, Plaintiff was harmed economically and emotionally (Id., P85-86); and, the only way to avoid injustice is to enforce the Defendants' promise of employment to Plaintiff (Id., P87). Defendants have moved to dismiss this claim.

In Ohio, a plaintiff must allege and prove[*22] the following elements in order to recover under a claim of promissory estoppel in the employment context: (1) the employer made a promise, clear and unambiguous in its terms, (2) which it reasonably should have expected to induce action or forbearance by the employee, (3) that there was such action or forbearance, and (4) injustice can only be avoided by enforcement of the promise. *Humphreys v. Bellaire Corp., 966 F.2d 1037, 1041 (6th Cir. 1992)* (citing *Mers v. Dispatch Printing Co., 19 Ohio St. 3d 100, 483 N.E.2d 150 (Ohio 1985))*.

The parties have confined their arguments to the first prong of this test, that is, to whether it is sufficient, for purposes of finding an allegation that Defendant Board made a promise of employment to Plaintiff, that Plaintiff

has alleged that the District Director of Personnel's secretary made statements which indicated that Plaintiff had been selected for the position, and which instructed Plaintiff to come in and complete the necessary paperwork (Doc. # 1, P21). Defendants argue that the Director's secretary had no authority to act for the Board, because only Defendant Board, not the District Director of Personnel (and even less his secretary), [*23] is authorized to enter into an employment contract, and because there is no allegation that Defendant Board ratified the purported offer.

In response, Plaintiff argues that her claim can succeed under a theory of apparent agency, by which Defendant Board will be bound by the statements of the Director's secretary if Plaintiff shows: (1) that the principal [Defendant Board] held the agent [secretary] out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted [her] to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority. *Master Consol. Corp. v. BancOhio Nat'l Bank, 61 Ohio St. 3d 570, 575 N.E.2d 817 (Ohio 1991)* (syllabus), quoted in *General Elec. Co. v. G. Siempelkamp GmbH & Co., 29 F.3d 1095, 1098 (6th Cir. 1994).* n4 Defendants argue that Plaintiff has failed to make this showing, because she did not specifically allege "any conduct by the school board directed toward holding out the secretary as the board's agent," and because Plaintiff is presumed[*24] to be aware that, by law, only Defendant Board can enter into employment contracts with teachers (Doc. # 8).

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n4 In an effort to support this argument, Plaintiff's counsel sets forth a number of factual assertions in the Memorandum in Opposition (Doc. # 6) which are not properly before this Court and will not be considered herein, given their non-compliance with the requirements of Rule 56 in regard to proper authentication of evidence.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - -

[HN9] When ruling upon a motion to dismiss brought under Rule 12(b)(6), this Court presumes all of the

allegations in the Complaint to be true, and determines whether it appears beyond doubt that the Plaintiff can prove no set of facts in support of her claim which would entitle her to relief. Under this standard, Plaintiff's claim for promissory estoppel is supported by sufficient factual allegations to allow her claim to survive this Motion to Dismiss.

As to the first prong, whether the employer made a promise, this Court finds for purposes of this Motion to Dismiss that Plaintiff's[*25] allegations in regard to the Director's secretary are sufficient, under a theory of apparent agency, to support the finding of such a promise. One could infer that it would have been reasonable for Plaintiff to have believed that Defendant Board had delegated, to the District Director of Personnel, the responsibility for contacting Plaintiff and asking her to complete the necessary paperwork after it had made the decision to hire her; further, it would have been reasonable for Plaintiff to have believed that the District Director of Personnel had delegated these tasks to his secretary. Therefore, for purposes of this Motion to Dismiss, Plaintiff has alleged facts sufficient to meet the first prong of the test for a promissory estoppel claim.

The parties did not brief the remaining three prongs of the test. However, this Court notes that Plaintiff did allege that Defendants reasonably should have expected that Plaintiff would have been induced to return to Greene County (second prong), that Plaintiff did so return, cutting short her participation in a conference by one day (third prong), and that injustice can only be avoided by enforcement of the promise of employment (fourth prong). [*26] This Court deems these allegations to be sufficient, for purposes of this Motion to Dismiss. n5 Accordingly, Defendants' Motion to Dismiss (Doc. # 5) is OVERRULED in regard to Count Seven.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n5 However, following discovery, Defendant Board may wish to file a properly documented Motion for Summary Judgment on this claim, particularly in regard to the issue of detrimental reliance.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -

E. All Claims in Regard to Defendant Williams

Defendants have moved to dismiss all claims against Defendant Williams (Doc. # 5). Because this Court has already dismissed Counts Five ( § 1981) and Six ( § 1983) from this lawsuit, it need not consider these claims. Instead, this Court will examine the claims remaining in the lawsuit, to determine whether Defendant Williams may be liable thereunder.

1. Counts One and Two (Title VII)

Although the Sixth Circuit has not determined whether an individual may be held personally liable under Title VII, a number of district courts within the Circuit have held that individuals may[*27] not be held personally (individually) liable. See *Bremiller v. Cleveland Psychiatric Institute, 879 F. Supp. 782, 787-88 (N.D. Ohio 1995); Winston v. Hardee's Food Systems, Inc., 903 F. Supp. 1151 (W.D. Ky. 1995); Wilson v. Wayne County, 856 F. Supp. 1254 (M.D. Tenn. 1994),* remanded by *69 F.3d 538, 1995 WL 638298 (6th Cir. 1995)* (holding that individual defendant is liable in only his official capacity, and remanding accordingly); *Lowry v. Clark, 843 F. Supp. 228 (E.D. Ky. 1994);* but see *Johnson v. University Surgical Group Assoc., 871 F. Supp. 979 (S.D. Ohio 1994)* (holding that supervisors are personally liable under Title VII). Other circuits are split on this issue. Compare *Miller v. Maxwell's Int'l, Inc., 991 F.2d 583 (9th Cir. 1993)* (holding that individuals may not be personally liable for discriminatory acts they commit in violation of Title VII), cert. denied, *510 U.S. 1109, 114 S. Ct. 1049, 127 L. Ed. 2d 372 (1994)* with *Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1316 n.1 (11th Cir. 1989)* (supervisors may be held liable under Title VII).

[HN10] Title VII prohibits employment-related discrimination, and imposes liability on employers. Thus, [*28] in order to determine whether supervisors should be held directly liable for violations of Title VII, this Court must consider whether supervisors are "employers" within the meaning of the Act.

[HN11] Title VII defines the term "employer" as:

a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person...

*42 U.S.C. § 2000e*(b) (emphasis added). The Sixth Circuit has defined the term "agent" to mean "an individual who serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing, or conditions of employment." *Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 803 (6th Cir. 1994).* This definition indicates that individuals, such as Superintendent of Schools' Williams, can be sued as employers; it does not, however, indicate whether they may be sued in their individual (as opposed to their official) capacities. The Sixth Circuit has not expressly decided whether supervisors can be sued in their individual capacities under Title VII, but, instead, has stated elsewhere[*29] that supervisors can be sued in their official capacities. See *York v. Tennessee Crushed Stone Ass'n, 684 F.2d 360, 362 (6th Cir. 1982).* One Ohio court concluded that the Sixth Circuit's decision in York "suggest[s] that an agent, in his official capacity, may be liable under Title VII only for the purpose of imposing respondeat superior liability on the employer." *Bremiller, 879 F. Supp. at 788.*

The Ninth Circuit came to a similar conclusion--that Title VII allows suits against employees only for purposes of imposing respondeat superior liability on the employer--after examining Congress' intent respecting Title VII, and case law on supervisory liability. *Miller, 991 F.2d at 587.* First, that court noted that Title VII's limitation of liability to employers with fifteen or more employees indicated that Congress did not want smaller employers to be subjected to costly litigation surrounding claims of discrimination; therefore, Congress did not intend to subject individual employees to liability. Id. Second, the Ninth Circuit noted that other courts, including the Sixth Circuit in York, have held individuals liable only in their[*30] official capacity, for purposes of imposing respondeat superior liability. Id.

This Court agrees with the analysis in Bremiller and Miller, and therefore holds that [HN12] a supervisor, such as Defendant Williams, in his role as Superintendent of Schools, and agent of the Defendant Board, may be sued under Title VII only in his official capacity, for purposes of imposing respondeat superior liability on the employer, and not in his individual capacity. n6 Accordingly, this Court SUSTAINS Defendants' Motion to Dismiss (Doc. # 5) Counts One and Two in regard to Defendant Williams.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - 

n6 Even though this Court has held that Defendant Williams could be sued under Title VII as an employer in his official capacity only, because Plaintiff has sued Defendant Board directly, there is no need for her to sue Defendant Williams in his

official capacity, for purposes of imposing respondeat superior liability upon Defendant Board. See *Bremiller, 879 F. Supp. at 788 n.1* ("Since plaintiff named [the employer] as a defendant, the court need not decide whether or not she could sue the [individual] defendants in their official capacities for the purpose of imposing respondeat superior liability on [the employer].").

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*31]

    2. Counts Three and Four (O.R.C. § 4112.02)

In Counts Three and Four, Plaintiff sues Defendants for race discrimination in violation of [HN13] O.R.C. § 4112.02(A), which provides:

It shall be an unlawful discriminatory practice for any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

§ 4112.02(A). [HN14] For purposes of O.R.C. § 4112.02(A), an "employer" is defined as "the state, any political subdivision of the state, any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of the employer." O.R.C. § 4112.01(A)(2) (emphasis added). n7 This definition indicates that individuals, such as Superintendent of Schools' Williams, acting in the interest of his employer, the Defendant Board, can be sued as employers; it does not, however, indicate whether they may be[*32] sued in their individual (as opposed to their official) capacities. The Ohio Supreme Court has not expressly decided whether supervisors can be sued in their individual capacities under Chapter 4112. In regard to Defendant Williams, the issue before this Court is whether this Defendant is an "employer" within the meaning of Chapter 4112, such that he can be sued, in his individual capacity, for violations thereof.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - -

n7 As a comparison, Title VII defines "employer" as: "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calender weeks in the current or preceding calender year, and any agent of such a person...." *42 U.S.C. § 2000e*(b) (emphasis added).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

An examination of state and federal case law relating to this issue indicates that although there is a recent trend toward defining supervisors as "employers," particularly in sexual harassment cases, there is no clear authority for holding Defendant Williams individually liable[*33] as an "employer" under O.R.C. § 4112.02. n8

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - -

n8 Even though this Court has held that Defendant Williams could be sued under O.R.C. § 4112.02 as an employer in his official capacity only, because Plaintiff has sued Defendant Board directly, there is no need for her to sue Defendant Williams in his official capacity, for purposes of imposing respondeat superior liability. See supra note 6.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

The first cases to address this issue clearly held that supervisors were not "employers" within the meaning of Chapter 4112. In *Sowers v. Ohio Civil Rights Comm'n, 20 Ohio Misc. 115; 252 N.E.2d 463 (Ohio Ct. Comm. Pleas 1969),* the court held that a school board member who allegedly had voted not to hire plaintiff due to discriminatory reasons based on religion, "was acting in his official capacity as a member of the board of a corporate entity and as such [] was not individually an 'employer' within the meaning of the statute." *252 N.E.2d at 476.* In a later case involving racial discrimination, the Sixth[*34] Circuit relied on Sowers to hold that two supervisors did not fall within the scope of the term "employer," as used in § 4112.02. *Foulks v. Ohio Dept.*

*of Rehab. & Correction*, 713 F.2d 1229, 1231 (6th Cir. 1983).

Recently, however, two Ohio courts have explicitly held, in cases alleging sexual harassment, that supervisors who either committed the harassment, *Davis v. Black*, 70 *Ohio App. 3d* 359; 591 *N.E.2d* 11, 19 (*Ohio Ct. App. 1991*) (suing pastor who allegedly harassed parish secretary), or were responsible for preventing the harassment from occurring, *Hart v. Justarr Corp.*, 98 *Ohio App. 3d* 673; 649 *N.E.2d* 316, 319 (*Ohio Ct. App. 1994*) (suing director and officer of corporation who had authority to dismiss the harasser), were "employers" under § 4112.02.

Unfortunately, the Davis court did not clearly explain its reasoning for its holding, but merely stated that "the supervisor for whom an employer may be vicariously liable under the doctrine of respondeat superior is also an employer within this definition." *591 N.E.2d at 19*. In Hart, however, the court discussed its rationale for holding the supervisor liable as an employer, based upon the Ohio Supreme[*35] Court's decision in *Kerans v. Porter Paint Co., 61 Ohio St. 3d 486; 575 N.E.2d 428 (1991):*

In Kerans, the Ohio Supreme Court reasoned that "an employer has a duty to provide its employees with a safe work environment and, thus, may be independently liable for failing to take corrective action against an employee who poses a threat of harm to fellow employees." *575 N.E.2d at 433*. This policy from Kerans is reflected in the Restatement, which states that in some circumstances, a person has a duty to prevent a wrongdoer from causing harm to a victim. If the person has a special relationship with the wrongdoer, the person may have a legal duty to control the wrongdoer's conduct. *Restatement of the Law 2d, Torts* (1965) 122, section 315(a).

...

In this case, the evidence is uncontroverted that [defendant] had unfettered power--other than his authority as a director and officer--to employ, retain, and dismiss [the harasser]... Therefore... we cannot say, as a matter of law, that [defendant] did not have a duty to control [the harasser's] alleged sexual harassment.

*Hart, 649 N.E.2d at 319*. Although Davis and Hart are not based upon[*36] the same rationale, they are similar in that the holdings appear to depend upon the unique nature of sexual harassment: in Davis, the sexual harassment by the plaintiff's supervisor, a co-employee, provided the sole basis for suing the employer; in Hart, the plaintiff's supervisor was found to have had a duty to

control a co-employee's harassment, based upon the Ohio Supreme Court's decision in Kerans.

Having considered the approaches taken by Ohio courts to this issue, this Court now holds, for three reasons, that, under the facts of this case, Defendant Williams is not individually liable as an "employer" under O.R.C. § 4112.02.

First, unlike the defendants in Davis and Hart, Defendant Williams is not being sued in his capacity as Plaintiff's supervisor. Instead, his position is more analogous to the defendant school board member in Sowers who was held by the court not to be an employer under Chapter 4112.

Second, even if Defendant Williams were being sued as Plaintiff's supervisor, there are no allegations of sexual harassment in this case. In this Court's opinion, sexual harassment cases are, by their very nature, often distinct from other, more[*37] subtle discriminatory employment actions, which do not have the effect of creating a hostile or unsafe work environment. As the Supreme Court has noted: "A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." *Harris v. Forklift Systems, Inc., 510 U.S. 17, 114 S. Ct. 367, 370-71, 126 L. Ed. 2d 295 (1993)*. This accords with the Ohio Supreme Court's statement that "an employer has a duty to provide its employees with a safe work environment.... where an employer knows or has reason to know that one of its employees is sexually harassing other employees, he may not sit idly by and do nothing." *Kerans, 575 N.E.2d at 433*. Given the unique harm inflicted by a hostile or unsafe work environment, the holdings in Hart and Davis might reasonably be considered as being exceptions to the general rule of not holding supervisors individually liable as "employers" under § 4112.02. As a result, this Court is unwilling to extend this exception beyond the context[*38] of hostile or unsafe work environments, and, therefore, to the facts of this case. n9

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n9 Of course, this Court acknowledges that hostile work environments are not necessarily limited to instances of sexual harassment; indeed, discriminatory actions in the workplace based on race, religion, or other illegal bases might also rise to the level of creating an abusive or unsafe work

environment. In those cases, it also would be logical to allow for individual liability.

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Third, Ohio courts have long held that O.R.C. § 4112.02 should be construed similarly to its federal counterpart, Title VII. See *Plumbers & Steamfitters Joint Appren. Comm. v. Ohio Civil Rights Comm'n, 66 Ohio St. 2d 192; 421 N.E.2d 128, 131 (Ohio 1981)* ("we have determined that federal case law interpreting Title VII... is generally applicable to cases involving alleged violations of R.C. Chapter 4112."). The definition of "employer" in Title VII, which includes "any agent" of the employer, *42 U.S.C. § 2000e*(b), is similar to the definition [*39]in Chapter 4112, which extends to "any person acting directly or indirectly in the interest of an employer." O.R.C. § 4112.01(A)(2). Therefore, it is reasonable to arrive at similar conclusions as to the issue of individual liability under these statutes. Earlier in this opinion, this Court held that Defendant Williams may not be held individually (personally) liable under Title VII. Therefore, because Ohio courts construe O.R.C. § 4112.02 in a manner similar to Title VII, this Court further holds that Defendant Williams may not be liable under § 4112.02. n10

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n10 This Court acknowledges that, in two cases, Judge Spiegel has held that individuals may be liable as employers under O.R.C. § 4112.02. See *Johnson v. University Surgical Assoc., 871 F. Supp. 979, 986-87 (S.D. Ohio 1994)* (holding that plaintiff could sue supervisor who sexually harassed her under O.R.C. § 4112.02); *Cameron v. Board of Educ. of Hillsboro, 795 F. Supp. 228, 240 (S.D. Ohio 1991)* (holding that a superintendent and head teacher were sufficiently alleged to have acted in the interest of the board of education, and thus were not entitled to summary judgment on a claim brought under § 4112.02 for sex discrimination). This Court finds the reasoning in these cases to be distinguishable, due to Judge Spiegel's statement in Johnson that he based this conclusion, in part, on his holding that individual employees may be individually liable under *Title VII. 871 F. Supp. at 987.* Since this Court disagrees with Judge Spiegel's conclusion as to individual liability

under Title VII, supra, it is unpersuaded by his conclusion in regard to individual liability under O.R.C. § 4112.02. However, based upon this Court's reasoning in regard to individual liability in hostile or unsafe work environments, supra, this Court notes its agreement with the result in Johnson, and its disagreement with the result in Cameron.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*40]

Accordingly, Defendant's Motion to Dismiss (Doc. # 5) is SUSTAINED as to Counts Three and Four, in regard to Defendant Williams.

**3. Count Seven (Promissory Estoppel)**

In her Complaint, Plaintiff has failed to set forth any factual allegations which indicate that Defendant Williams had either actual or apparent authority to make a promise regarding Plaintiff's employment in 1991. Indeed, the factual allegations which support this claim do not appear to relate to Defendant Williams at all. Therefore, because Plaintiff has not set forth any factual allegations under which Defendant Williams could be held liable under this claim, Defendants' Motion to Dismiss (Doc. # 5) is SUSTAINED as to Count Seven, in regard to Defendant Williams. However, Plaintiff may seek leave of this Court to file an Amended Complaint on this claim, consistent with her responsibilities under *Rule 11 of the Federal Rules of Civil Procedure.*

**F. Punitive Damages**

Defendants have moved to dismiss Plaintiff's request for punitive damages, which request appears to be based upon all of her claims for relief as to both Defendants (Doc. # 1, Section IV, PG). This Court need not discuss the issue of punitive[*41] damages in regard to Defendant Williams, as there are no remaining claims against him. Furthermore, this Court need not address this issue in regard to Counts Five and Six, alleged against Defendant Board, which have been dismissed.

In regard to Counts One and Two (Title VII), Defendants have pointed to the text of the Civil Rights Act Amendments of 1991, as codified at *42 U.S.C. § 1981a*(b)(1), which provides as follows, in regard to punitive damages:
  [HN15]
A complaining party may recover punitive damages under this section against a respondent (other than a

government, government agency or political subdivision)
...

42 U.S.C. § 1981a(b)(1). This Court agrees that [HN16] Defendant Board qualifies as a "political subdivision" within the meaning of § 1981a, and is therefore immune from liability for punitive damages in Title VII claims. Accord *Garrett v. Clarke County Bd. of Educ., 857 F. Supp. 949, 953 (S.D. Ala. 1994)* (holding that the defendant school board of education was a governmental entity and therefore immune from liability for punitive damages in a Title VII action). Accordingly, Defendant's Motion to Dismiss (Doc. # 5) is SUSTAINED in regard to Defendant Board's[*42] liability for punitive damages under Counts One and Two.

In regard to Counts Three and Four, brought under O.R.C. § 4112.02, this Court notes that the parties unfortunately did not specifically brief the issue of whether Defendant Board is liable for punitive damages under this Chapter. After setting forth a few, non-exclusive observations, this Court will overrule Defendants' motion at this time, without prejudice to renewal in the form of a properly documented motion for summary judgment.

Prior to 1987, punitive damages were not available in actions brought under O.R.C. § 4112.02. See *Helmick v. Cincinnati Word Processing, 45 Ohio St. 3d 131; 543 N.E.2d 1212, 1215 (Ohio 1989)* (noting that until 1987 "no provision was made for the recovery of compensatory and punitive damages" under Chapter 4112). However, in 1987, the provision which sets forth the available remedies for such actions was amended as follows: "Whoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief." O.R.C. § 4112.99. Although a few courts subsequently held that punitive damages are not available under this section, see *Hitchings [*43] v. Weese, 1995 Ohio App. LEXIS 5928, No. 95- CA-539, 1995 WL 768422, at *1-2 (Ohio Ct. App. Holmes County 1995)* (following Schillig); *Schillig v. Ambulance Assoc., Inc., 1991 Ohio App. LEXIS 1657, No. CA-8275, 1991 WL 57155, at *4-5 (Ohio Ct. App. Stark County 1991)* (holding that punitive damages are unavailable because not expressly provided for in § 4112.99), a majority of courts have held that punitive damages are authorized by § 4112.99. See *Potocnik v. Sifco Indus., Inc., 103 Ohio App. 3d 560; 660 N.E.2d 510, 519 (Ohio Ct. App. Cuyahoga County 1995)* (following Delaney, Crain and Grant, and disagreeing with Schillig); *Delaney v. Skyline Lodge, Inc., 95 Ohio App. 3d 264; 642 N.E.2d 395, 399 n.3 (Ohio Ct. App. Hamilton County 1994)* (stating that 4112.99 allows award of back pay, compensatory and punitive damages, and injunctive relief); *Crain v. Cincinnati Auto. Club, 1990 U.S. Dist. LEXIS 20799, No.*

*C-1-88-0295, 1990 WL 198404, at *1 (S.D. Ohio 1990)* (holding that punitives are available because "damages" under § 4112.99 are not limited to equitable relief, unlike other Ohio discrimination statutes); *Grant v. Monsanto Co., 1989 U.S. Dist. LEXIS 16015, No. C-1-89-379, 1989 WL 222961, at *1 (S.D. Ohio 1989)* (holding that punitives are available[*44] because the language of § 4112.99 does not preclude such a result). This Court is inclined to follow the weight of authority on this issue, and conclude that punitive damages are available in actions under § 4112.02.

A more difficult question, however, is whether a public employer should be held liable for punitive damages in actions brought under Chapter 4112. None of the cases which this Court has cited as authorizing the award of punitive damages, supra, involved a public (as opposed to a private) employer. Therefore, this appears to be an issue of first impression.

At least two statutory provisions may be applicable to this inquiry. First, O.R.C. § 2744.05(A) provides as follows:

Notwithstanding any other provisions of the Revised Code or rules of a court to the contrary, in an action against a political subdivision to recover damages for injury, death, or loss to persons or property caused by an act or omission in connection with a governmental or proprietary function: Punitive or exemplary damages shall not be awarded.

Under this section, if actions brought under Chapter 4112 are, in essence, actions "to recover damages for injury ... or loss to persons[*45] or property," it may be argued that punitive damages are unavailable against Defendant Board. However, a provision in Chapter 4112 could conceivably provide the basis for a contrary argument:

This chapter [4112] shall be construed liberally for the accomplishment of its purposes, and any law inconsistent with any provision of this chapter shall not apply.

O.R.C. § 4112.08.

Given the complexity and novelty of this issue, and the lack of input in the form of briefing from the parties, this Court prefers to overrule Defendants' motion at this time, although it may be renewed at a later stage in the litigation, in the form of a properly documented motion for summary judgment. Accordingly, Defendants' Motion to Dismiss (Doc. # 5) is OVERRULED in regard to Defendant Board's liability for punitive damages under Counts Three and Four.

Finally, in regard to Count Seven, the parties also failed to brief the issue of whether Defendant Board is liable for punitive damages under Plaintiff's promissory estoppel claim. This Court holds that such damages are not available, given that [HN17] punitive damages are not available for breach of contract claims, *Battista v. Lebanon Trotting [*46] Ass'n, 538 F.2d 111, 118 (6th Cir. 1976)* (noting the "unbroken line of authority in Ohio that ... no punitive damages are available for breach of contract."), and that promissory estoppel is merely a substitute theory of recovery on contract claims. See *McIntosh v. Micheli Restaurant, Inc., 22 Ohio Misc. 2d 5; 488 N.E.2d 1261 (Ohio Mun. Ct. 1984)* (holding that plaintiff could not recover punitive damages where action was for breach of contract, not tort, and theory of recovery was promissory or equitable estoppel). Accordingly, Defendants' Motion to Dismiss (Doc. # 5) is OVERRULED in regard to Defendant Board's liability for punitive damages under Count Seven.

WHEREFORE, based upon the aforesaid, this Court OVERRULES Defendant's Motion to Strike Exhibits to and Portions of Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss (Doc. # 9).

This Court SUSTAINS Defendants' Motion to Dismiss (Doc. # 5) in part: Counts Five and Six are dismissed; all claims in regard to Defendant Williams are dismissed and said Defendant is dismissed as a party to this litigation; and Plaintiff's request for punitive damages in regard to Counts One, Two and Seven, against Defendant[*47] Board of Education, are dismissed.

This Court OVERRULES Defendants' Motion to Dismiss (Doc. # 5) in part: Counts One and Two remain viable in regard to the alleged 1991 violation against Defendant Board; Count Seven remains viable against Defendant Board; and Plaintiff's request for punitive damages in regard to Counts Three and Four, against Defendant Board of Education, remains viable.

Leave to file an Amended Complaint, subject to the strictures of *Rule 11 of the Federal Rules of Civil Procedure*, has been granted in certain particulars.

March 25, 1996

WALTER HERBERT RICE

UNITED STATES DISTRICT JUDGE