IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| CARMEN CARTER,<br>PLAINTIFF, | CASE NO. C-1-00-739 |
| | Sr. Judge Arthur Spiegel |
| vs. | |
| THE E.W. SCRIPPS COMPANY,<br>DEFENDANT. | **Application for Appointment of Attorney Pursuant to 28 USC § 1915(e)(1)** |

Comes now Plaintiff with a motion for appointment of counsel pursuant to the aforementioned statute which states: "the Court may request an attorney to represent any person unable to afford counsel."

The Plaintiff prays the Court grants her an evidentiary hearing to assist the Court in determining the propriety of appointing counsel and that the Court ultimately appoints the Plaintiff counsel pursuant to the aforementioned statute.

Memorandum in support is attached hereto and incorporated by reference and exhibits.

## MEMORANDUM

An updated Affidavit in Support of the Motion to Proceed In Forma Pauperis is attached as exhibit 8 to sustain the Plaintiff's Motion for Appointment of Counsel. Incorporated into the affidavit is the Plaintiff's sworn independent effort at attaining an attorney.

1

In appealing the Order of Magistrate Judge Hogan (1-8-04) denying Plaintiff's motion to proceed *in forma pauperis* and the motion seeking appointment of counsel – the Plaintiff wishes to remind the Court that payment of the full filing fee of $255 should not be a bar to in forma pauperis status. It turns out that was the last time the Plaintiff had such a sum of money. Paying the fee created a hardship by requiring part of what was originally her rent and forcing her to again ask her church family's assistance.

> "The statute contemplates that a person not a pauper at the commencement of a suit may become one during or prior to its prosecution. In fact, since one may not legitimately make such an application until he is a pauper, his application may not be denied simply because he made an initial decision to attempt to pay his own way."

*Flowers v Turbine Support Division,* 507 F.2d 1242, (5th Cir. 1975).

The Plaintiff has had difficulty managing this and another case (C-1-00-977) due to Major Depressive Disorder. As a result, illness prevented her responding to the Magistrate's Report and Recommendations in this case, as well as filings by the Defendant and Court Orders in C-1-00-977.

> "The district court has broad discretion in determining whether to appoint counsel, but it 'is to be guided by sound legal principles.'"

*United States of America ex rel. Mung v Page,* 1997 U.S. Dist. LEXIS 7435, (quoting *Maclin v Freake,* 650 F.2d, 885, 886 (7th Cir. 1981) (citing *Ekanem v Health & Hospital Corp. of Marion County,* 589 F.2d 316, 319 (7th Cir. 1978).

Once financial hardship is established, courts require a threshold showing of whether the circumstances are "exceptional", i.e., merits of the case, the litigant's capability of conducting an investigation of the facts of the case; the complexity of the legal and factual issues, and the ability of the litigant to represent herself.

> "To determine whether there are exceptional circumstances sufficient to warrant the appointment of counsel, a court must examine the total situation, focusing, inter alia, on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent himself."

*DesRosiers v Moran*, 949 F.2d 15 (1st Cir. 1991).

## FINANCIAL ABILITY TO RETAIN COUNSEL

In support of this application is an affidavit addressing the Plaintiff's indigence (exhibit 8).

The Plaintiff is destitute and unable to pay an attorney, let alone her own living expenses, as indicated by the attached affidavit.

She is unable to obtain a lawyer because she is indigent. In 2003, the Plaintiff was evicted (because of her inability to pay) from the two-story townhouse where she resided for 12 years. Since her wrongful termination by the Defendant in 1999 -- the Plaintiff has wavered between underemployment and unemployment. The Plaintiff was diagnosed with Major Depressive Disorder in 1996 while in the employ of The E. W. Scripps Company, where her disability was not accommodated. She is currently a Social Security Disability/SSI applicant.

The Plaintiff also takes this opportunity to remind the Court she has already been granted In Forma Pauperis status in the twin case (C-1-00-977).

## MERIT

> "In trial courts, the preliminary assessment of likely merit must be undertaken somewhat more generously since the unrepresented litigant might have difficulty articulating the circumstances that will indicate the merit that might be developed by competent counsel."

*Hendricks v Coughlin*, 114 F.3d 390, 392 (2nd Cir. 1997) (quoting *Cooper v A. Sargenti*

3

*Co.*, 877 F.2d 170 at 174 (2d Cir. 1989).

"Weighing in plaintiff's favor also means indulging all reasonable inferences in plaintiff's behalf", quoting *Johnson v Rodriguez*, 943 F.2d 104, 107 (1st Cir. 1991).

Because the Plaintiff already has before this Court a Motion to Vacate, she re-submits this succinct document summarizing some of her arguments (exhibit 1). However, the Plaintiff buttresses those arguments with a few copies of E-mails between the Plaintiff and one of Defendant's arbitration witnesses contrasting their arbitration testimony. These are only a few examples showing the award was attained through unmitigated perjury. The Plaintiff has previously submitted to the Court the four-volume transcripts of the subject December 1999 arbitration hearing. The E. W. Scripps Company has requested and received through discovery copies of E-mails in the Plaintiff's possession.

On pages 68-70 of Vol. I of the arbitration transcript, the Defendant's key witness, Albert Salvato, formerly the Plaintiff's immediate supervisor, says he copied E-mails from the Plaintiff, created a new file and put them in a new file. On page 70 the Cincinnati Newspaper Guild objected to the admission of any exhibits failing to show "the full conversation or exchange of messages that occurred."

What isn't revealed by the Cincinnati Newspaper Guild's cross-examination of Salvato is that Salvato doctored the messages.

Although the Defendant vouches for the "integrity" of Salvato, it cost The E. W. Scripps Company $327,877 in 1991, when now retired Campbell County (KY) Commonwealth Attorney Louis A. Ball successfully sued The Kentucky Post for libel (*Ball v The Kentucky Post,* 801 S.W.2d 684; 1990 Ky. LEXIS 141). A jury in November

1985 found a series of articles ("Portrait of a Prosecutor") penned by Salvato "false", "defamatory" and "motivated by actual malice". Appealed to the Supreme Court of Kentucky, the trial court's judgment was reinstated and the Supreme Court of Kentucky concluded:

> "There is other evidence from witnesses too extensive to detail…from which one could infer that Salvato held a grudge against Lou Ball."

This information is instructive because Salvato perjured himself repeatedly throughout the arbitration hearing, maligning and slandering of the Plaintiff.

On pages 80 to 82 of Vol. I of the arbitration transcripts, Salvato falsely claims to have given the Plaintiff the assignment to cover a King Day (Martin Luther King) rally on Fountain Square and a march.

Under cross examination (page 152), Salvato emphatically insists the Plaintiff was to cover three events, the MLK breakfast, the rally on Fountain Square, and the march to Music Hall. He goes as far as to say the Plaintiff was to dictate the story by calling in twice: once after the rally and once after the march, but that she was NOT to cover the series of speeches at Music Hall (pg 153).

However, E-mail from the Defendant's witness, Salvato to the Plaintiff reveals that in fact she was only to cover the annual MLK breakfast and ANOTHER reporter, Steve Huba, would cover the rally and march to Music Hall (afternoon) programs (exhibit 2).

On pages 113-114 of Vol. I of the arbitration transcripts, witness Salvato also prevaricates that the Plaintiff turned in an assignment late because she arrived at work late. The E. W. Scripps Company submitted into evidence a document (company exhibit 23, but here exhibit 3) that witness Salvato knew was false when he created it. Note the

5

unedited E-mails between the Plaintiff and Salvato (exhibit 4) point out Salvato actually gave the Plaintiff the assignments after 7 a.m. The Plaintiff worked a 6 a.m. to 3 p.m. shift. Read from the bottom of page two in time sequence -- messages from the Plaintiff to Salvato appear as Salvato, Carter, followed by the date and time; messages from Salvato to the Plaintiff are simply, Salvato.

Although Salvato was not the only witness of The E. W. Scripps Company committing perjury during the arbitration, he was definitively the most prolific.

According to Title 9 of the Federal Arbitration Act, "where the award was procured by corruption, fraud or undue means" an application for vacating the award may be made.

FACTUAL INQUIRY AND SELF-REPRESENTATION

Given the lack of counsel, the Plaintiff had substantial difficulty in collecting factual information during discovery from the Defendant. The E. W. Scripps Company has steadfastly subverted any real discovery of its contributions to Northern Kentucky University, the employer of Arbitrator Edward P. Goggin.

In February 2003, the Defendant forwarded their Second Supplemental Answers and Objections to Plaintiff's First Set of Interrogatories (exhibit 5). Their correspondence indicates the amount contributed to Northern Kentucky University in 2002 "is significantly more than the amount previously disclosed". Although the amount has been increased, it does not come close to the amount ($750,000) spent for the Northern Kentucky University's Scripps Howard Center for Civic Engagement, revealed within weeks of the amended interrogatories (exhibit 6).

6

Interrogatory responses by the Defendant were contemptuously furtive as evidenced by their response to Plaintiff's Interrogatory 4b:

> Please identify by naming the grantor individual, corporation of other legally recognized entity, or organization including but not limited to holding companies or foundation in which employees of the defendant or its corporate subsidiaries, hold positions of any type, which have made grants, gifts, or other payments to Samuel P. Chase College of Law, or Northern Kentucky University since 1980.

The E. W. Scripps Company's response claimed:

> " the information requested is not in the personal knowledge of The Post in that The Post does not keep records of grants, gifts or other payments made by individual employees."

Confronted with documents from Northern Kentucky University that the Defendant participates in the university's matching gift programs, The E. W. Scripps Company then claimed to have misunderstood the question. Regardless, The E. W. Scripps Company's own website reveals it has a matching gift program which includes Northern Kentucky University (exhibit 7).

The Defendant claims all its contributions to Northern Kentucky University are made through The E. W. Scripps Company. However, Plaintiff's Motion to Compel IV and Memorandum to Plaintiff's Motion to Compel IV reveals through Northern Kentucky University documents that The Kentucky Post, The E. W. Scripps Company and the Scripps Howard Foundation are all individual contributors. More importantly, even confronted with such blatant prevarications, the Defendant has never produced anything (despite revelations The E. W. Scripps Company not only has a matching gift program, but loans employees to Northern Kentucky University's fundraising effort's much like the United Way campaign).

7

The Plaintiff's ability to represent herself and to gather factual information has also been hindered by Major Depressive Disorder, which has kept the Plaintiff from responding both to the Defendant's retorts to the Plaintiff's Opposition to Defendant's Motion for Summary Judgment and the Magistrate's Report and Recommendations. Of equal significance is the necessity to assess Constitutional matters of due process, which the Plaintiff is hardly competent to take on.

## COMPLEXITY OF LEGAL AND FACTUAL ISSUES

In *Barnell v Paine Webber Jackson & Curtis, Inc.* (1984, SD NY) 577 F Supp 976, the Court concluded the plaintiff's ability to gather and present crucial facts must be considered:

> "Plaintiff claims that she was mentally incapacitated. Even assuming that she is fully recovered, plaintiff will undoubtedly have difficulty proving her own incapacity. For one thing, requiring plaintiff to proceed *pro se* ... will require her to plumb the depths of her deepest depression to marshal facts in her own favor. Additionally, plaintiff would have to master the complex task of preparing and examining experts. Psychologists and psychiatrists are among the most difficult experts to handle properly. Finally, plaintiff would be left in the unenviable position of examining herself -- testifying without proper questioning -- about her own emotional deficiencies at the time in question. The Court feels that plaintiff should not be required to prove her own incapacity unaided by counsel."

In the subject lawsuit, Major Depressive Disorder has prevented the Plaintiff from responding to the Defendant's retorts to Plaintiff's Opposition to Defendant's Motion for Summary Judgment; as well as the Magistrate's Report and Recommendations and filings submitted by the Defendant in C-1-00-977. Consequently, this Court granted The E. W. Scripps Company summary judgment. The Plaintiff's condition has worsened in the past year and she is now a Social Security Disability/SSI applicant. The Plaintiff has submitted documents from her medical record substantiating her condition, Major

Depressive Disorder, for the Court's perusal in the Motion to Strike Defendant's Answer to Plaintiff's Motion to Vacate (exhibits 2-4).

At first glance, this case may appear relatively straightforward. However, beneath the surface are the intricacies of Constitutional law regarding due process, perjured testimony, pretextual invidious discriminatory acts and a Plaintiff struggling with Major Depressive Disorder. The manner in which the Defendant has circumvented discovery rules and the Plaintiff's unfamiliarity with the Federal Rules of Civil Procedure and local Court rules also creates a substantial uncertainty the Plaintiff can properly litigate this case without counsel.

Appointment of counsel is appropriate if the difficulty of the issues relevant to the capabilities of the litigant would make it impossible for the plaintiff to obtain any sort of justice without the aid of a lawyer and he could not obtain a lawyer on his own. *Farmer v Haas,* 990 F.2d 319 at 322.

An order denying appointed counsel is one a District Court generally anticipates reassessing as litigation progresses, *Holt v Ford,* 862 F.2d 850, 852 (9th Cir. 1989) (en banc). The Plaintiff prays for the Court's reconsideration of the Order denying counsel and granting *in forma pauperis* status.

                          Respectfully submitted,

                          */s/ Carmen Carter*
                          Carmen Carter
                          419 Probasco Street #7
                          Cincinnati, OH 45220
                          (513) 751-5076

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has forwarded a copy of the foregoing to the Defendant's counsel, David Holcombe, Baker & Hostetler, 312 Walnut Street, Cincinnati, OH 45202, via ordinary U.S. mail this 6th day of May 2004.

*Carmen Carter*
Carmen Carter